# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| MAPLEBEAR INC. DBA INSTACART,<br><br>Plaintiff,<br><br>v.<br><br>CORNERSHOP TECHNOLOGIES, INC.;<br>CORNERSHOP TECHNOLOGIES LLC;<br>DELIVERY TECHNOLOGIES US, INC.;<br>DOES 1-10,<br><br>Defendants. | Case Action No. 2:20-cv-240 |

## **COMPLAINT FOR INJUNCTIVE RELIEF AND MONEY DAMAGES**

Plaintiff Maplebear Inc. dba Instacart ("Instacart"), for its Complaint against Defendants Cornershop Technologies, Inc., Cornershop Technologies LLC, Delivery Technologies US, Inc., and Does 1-10 (collectively, "Cornershop" or the "Cornershop Defendants"), based upon actual knowledge with respect to itself and its own acts and upon information and belief as to other persons and matters, hereby alleges as follows:

## NATURE OF THE ACTION

1.        Instacart brings this suit to stop the brazen and illegal accessing of its computer systems and the theft and misuse of its intellectual property by Defendant Cornershop. Cornershop launched in Chile in 2015 with a specific goal: to be an "Instacart for Latin America."[1]

2.        In May 2020, Cornershop launched operations in two U.S. States (Texas and Florida), with plans to expand rapidly nationwide. But instead of competing fairly, Cornershop has illegally accessed and scraped Instacart's Platform,[2] copying and using without authorization thousands of copyrighted and licensed images, along with product descriptions, pricing data, and other information taken from Instacart—all while falsely representing to its customers and the world that these materials are licensed or owned by Cornershop.

3.        Cornershop has carried out its illegal enterprise with striking audacity. It has advertised for engineering positions in Texas with job duties including "scrap[ing] . . . catalogs"

---

[1] *See* "Jackson Square Ventures just closed its third fund with $193 million; here's how it plans to invest it" (October 14, 2019), *available at* https://techcrunch.com/2019/10/14/jackson-square-ventures-just-closed-its-third-fund-with-193-million-heres-how-it-plans-to-invest-it.

[2] As used herein, the Instacart "Platform" refers to Instacart's proprietary platform, whether accessed by a web-based browser or phone-based application ("app"), that processes customer orders placed on virtual retailer storefronts, as well as the app through which the independent service providers with whom Instacart contracts ("shoppers") using the Instacart Platform receive those orders.

1387375

1

and required skills including "[a]dvanced scraping" and the "[a]bility to generate good scrapers." **Ex. A**.

4.      It has copied thousands of copyrighted and proprietary images and used them without attribution or permission, after changing the file names to disguise their source.

5.      By stealing and misusing Instacart's data, Cornershop has evaded the substantial investments required of legitimate competitors in this industry. Instacart has invested millions of dollars to develop and maintain online "virtual storefronts" that feature its retailer partners' catalogs in an intuitive and pleasing interface.

6.      Instacart's efforts have included, among other things, creating thousands of aesthetically pleasing original product images to best connect consumers with the groceries and household essentials that they want and need.

7.      But Cornershop has simply copied thousands of these images—ignoring Instacart's copyrights and express prohibitions against doing so—and reposted them on Cornershop's platform to unfairly compete against Instacart.

8.      To conceal its wrongdoing, Cornershop has changed the file names on the images it has stolen from Instacart, as the chart of examples below reflects:

| Product Name | Instacart File Name/URL | Cornershop Product Page URL |
|---|---|---|
| Everyday Sliced Mushrooms | https://d2lnr5mha7bycj.cloudfront.net/product-image/file/large_e9973fc9-1367-4c48-b1d4-c476738db10d.jpg | https://s.cornershopapp.com/product-images/1818983.jpg |
| Country Pride Chicken Leg Quarters | https://d2lnr5mha7bycj.cloudfront.net/product-image/file/large_143822fc-36c4-48f1-95ee-beec70fb02eb.jpg | https://s.cornershopapp.com/product-images/1795933.jpg |
| Daily Bread Marketplace Hummus | https://d2lnr5mha7bycj.cloudfront.net/product-image/file/large_b943aa30-916a-4f6f-ad74-1469b2188117.jpg | https://s.cornershopapp.com/product-images/1769133.jpg |

1387375

9.     However, the product images Cornershop has stolen from Instacart are identical to Instacart's copyrighted images, as the below examples reflect:

**Instacart Image**                    **Cornershop Image**

                    

                    

                    

1387375

3

10.     Cornershop is well aware of the unfair advantage it has gained by stealing a business instead of building one. As its Chief Technology Officer Daniel Undurraga explained in 2016, Cornershop was "profitable almost from day one" because it "did not have a lot of R&D expense."[3] Unless enjoined, Cornershop will continue to subject Instacart to irreparable harm and distort the economics of the online grocery industry.

11.     Cornershop's activities described herein violate the Computer Fraud and Abuse Act ("CFAA"), the federal Copyright Act, the Digital Millennium Copyright Act ("DMCA"), the Texas Harmful Access by a Computer Act ("THACA"), and Texas law protecting fair competition, and breach Instacart's Terms of Service ("TOS").

12.     Through this action, Instacart seeks preliminary and permanent injunctive relief to halt Cornershop's intentional and ongoing legal violations, as well as monetary damages to compensate Instacart for the injuries Cornershop has caused that are compensable by damages, and other appropriate relief set forth herein.

## THE PARTIES

13.     Plaintiff Instacart is a Delaware corporation with its principal place of business located at 50 Beale St., Suite #600, in San Francisco, California. Instacart, a technology company that provides an online Platform to facilitate grocery shopping and delivery services, maintains substantial ongoing business operations throughout the United States, including in more than five hundred communities in Texas. Within the Eastern District of Texas, Instacart offers its service in the communities of Plano, Frisco, Allen, Carrollton, and The Colony, among others.

---

[3] "Cornershop aims for slice of grocery shopping in Chile and Mexico" (June 1, 2016), *available at* https://www.idgconnect.com/idgconnect/interviews/1001219/cornershop-aims-slice-grocery-shopping-chile-mexico.

1387375

14.     Defendant Cornershop Technologies, Inc. is a Delaware corporation that claims ownership of the copyright in the Cornershop iOS app. Cornershop's business is similar to Instacart's grocery delivery platform: customers place orders for groceries on the app and shoppers using the Cornershop platform purchase them at local stores for home delivery. Oskar Hjertonsson is Cornershop Technologies, Inc.'s sole officer and director. On information and belief, Cornershop Technologies, Inc. is a corporate affiliate, parent, or subsidiary of the other Cornershop Defendants.

15.     Defendant Cornershop Technologies LLC is a Delaware limited liability company. Cornershop Technologies LLC claims ownership to the copyright in the Android version of the Cornershop app. On information and belief, Cornershop Technologies LLC is a corporate affiliate, parent, or subsidiary of the other Cornershop Defendants.

16.     Defendant Delivery Technologies US, Inc. is a Delaware corporation registered to conduct business in California, Florida, and Texas. Oskar Hjertonsson is Delivery Technologies US, Inc.'s sole officer and director. On information and belief, Delivery Technologies US, Inc. is a corporate affiliate, parent or subsidiary of the other Cornershop Defendants and is Cornershop's operational entity in the United States.

17.     On information and belief, each of the named Defendants are acting in agreement, coordination, and on behalf of each other named Defendant. Each named Defendant has acted with the intent of accomplishing the unlawful actions described herein for the benefit of each other named Defendant.

18.     The identities of Defendants Does 1 through 10 are currently unknown to Instacart. On information and belief, these Doe defendants are scraping Instacart's Platform at

Cornershop's direction and under Cornershop's control. Instacart will amend its Complaint to name each Doe defendant when it learns each Doe defendant's true identity.

## JURISDICTION AND VENUE

19.     This Court has federal subject matter jurisdiction over Instacart's claims under the Copyright Act, DMCA, and CFAA pursuant to 28 U.S.C. § 1331 because those claims arise under federal law. The Court also has original jurisdiction over Instacart's copyright claims under 28 U.S.C. § 1338(a).

20.     The Court has supplemental subject matter jurisdiction over Instacart's state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

21.     This Court has specific personal jurisdiction over each Defendant because each of Instacart's claims arises out of each Defendant's substantial, intentional contacts with Texas.

22.     Cornershop is copying and misappropriating Instacart's images to support its operation of a highly interactive computer service that allows Texas residents to purchase products from Texas stores for immediate home delivery. Cornershop displays the images it scraped from Instacart to Texas users who access Cornershop's application from their Texas homes.

23.     Shoppers using the Cornershop platform in Texas purchase goods at Texas stores for home delivery.

24.     Cornershop has advertised for several positions based in Dallas and Austin, Texas, including engineering and business development roles. Specifically, Cornershop has posted openings for multiple Backend Integrations Engineer positions in Dallas and Austin that

1387375

describe job duties including "[s]crap[ing] and maintain[ing] catalogs using multiple frameworks (scrapy, beautifulsoup, selenium, etc[.]" *See* **Ex. A**. Required skills include "[a]dvanced scraping" and the "[a]bility to generate good scrapers." *Id.*

25.     Instacart uses Amazon Web Services ("AWS"), AWS S3 file storage services, and a database vendor called Snowflake to store and compute the data that powers its Platform. SnowFlake provides a cloud-based metadata "warehouse" for Instacart's product images, which runs on AWS. Instacart's images themselves are stored in Instacart's AWS S3 file storage account.

26.     AWS provides a network of physical computer servers located across the country that store and compute data for internet companies.

27.     Instacart uses AWS's CloudFront service as a content delivery network ("CDN"). A CDN is a distributed network of physical servers that facilitates streamlined delivery of content, and as relevant here, images of products, to individual users. CloudFront works by storing a cached copy of Instacart's customer-facing content in local servers that are situated closer to end-users. These local servers are known as "EDGE servers." In Texas, AWS operates EDGE servers in six locations around the Dallas/Fort Worth metropolitan area.

28.     When a user in Texas accesses the Instacart Platform, CloudFront transmits a cached version of the Platform to the user. In normal circumstances, a Texas user receives the cached version of the Platform from one of the Dallas/Fort Worth EDGE servers.

29.     On information and belief, Cornershop is scraping Instacart's website at least in part from computers located in Texas. On information and belief, Cornershop's Texas scrapers illegally accessed the cached version on Instacart's website stored on EDGE servers located in the Dallas/Fort Worth metropolitan area.

30.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because, as described herein, a substantial part of the events or omissions giving rise to Instacart's claims occurred in this District.

31.     Specifically, shoppers using the Cornershop platform have offered delivery services in portions of Denton and Collins counties, which are located within the Eastern District of Texas.

32.     Without limitation, and by way of example, in the past month, a Cornershop user placed an order using the Cornershop application from an address in Plano, Texas, located within Collin County, Texas, within the Eastern District of Texas. A Cornershop shopper delivered the order to the same Plano, Texas address located within Collin County in the Eastern District of Texas.

33.     Cornershop has displayed misappropriated images to residents of this District, such that infringing use has occurred in this District. Instacart has sustained damages in this District as a result of Cornershop's tortious activity directed towards and conducted within this District. Moreover, Cornershop has competed unfairly against Instacart within this District.

## GENERAL ALLEGATIONS

## I.     INSTACART

34.     Founded in 2012 by Apoorva Mehta, Max Mullen, and Brandon Leonardo, Instacart is a San Francisco-based technology company that provides a Platform through which customers can purchase groceries and consumer packaged goods ("CPG") from retailer partners and arrange for those goods to be delivered on an expedited basis by shoppers or made available for pickup from specified brick and mortar stores.

35.    In the United States, Instacart's service is available in all 50 States and the District of Columbia. In Texas specifically, Instacart serves more than five hundred communities.

36.    For customers, the Instacart Platform offers on-demand shopping from numerous retailers through a single smartphone app or website, allowing them to combine goods from multiple stores into a single order, and facilitates delivery of the goods directly to their doorstep.

37.    For shoppers, Instacart provides an automated matching function using proprietary technology. The Instacart Platform offers the orders placed by customers to independent service providers with whom Instacart contracts. These providers, who use Instacart's Platform to indicate their availability to receive and accept orders at their discretion, enter into written agreements to perform services as independent contractors.

38.    For retailers, Instacart provides a virtual marketplace through which goods can be sold and delivered. Instacart's Platform provides a sophisticated catalog and data ingestion system that allows retailers to present a different set of products on a store-by-store basis. Retailers decide which items are offered for sale through the Instacart Platform and generally set the prices at which those items are offered.

39.    The company's business is designed to serve—and draw revenue from—the e-commerce transactions performed through its Platform. Further, Instacart collects service fees for providing retailers a virtual marketplace through which goods can be sold and delivered.

40.    Like most other e-commerce technology platforms, Instacart also generates revenue through advertising, as retailers, CPG brands, and other businesses use its Platform to advertise and promote their stores, brands, or products.

1387375

41.     Instacart is not a retailer and does not own or resell any goods. The company does not perform the actual transportation and delivery of the goods purchased through its Platform to consumers; instead, it has contracted with independent service providers who are able to access the Platform to provide delivery services.

42.     Instacart began as and remains a technology company, devoting most of its business to developing and maintaining the complex technology and related infrastructure necessary to operate its Platform.

43.     Instacart's catalog is the largest online grocery inventory in the world, with over half a billion item listings from over 400 different retailers from over 30,000 stores across North America. It is made up of over 70 data sources, including third-party content aggregators, manufacturers, and proprietary copyrighted images taken as part of Instacart's Mobile Photo Studio ("MoPho Studio").[4]

44.     Instacart has invested significant time and resources into making the catalog a highly reactive system, allowing for changes to inventory, price, and other product attributes minute by minute. In addition to processing this data in real time from retailers, Instacart processes data from feedback from customers and shoppers using its Platform and other sources to ensure that the catalog is updated with pinpoint accuracy.[5]

---

[4] *See* "The story behind an Instacart order, Part 1: building a digital catalog" (May 8, 2019), *available at* https://tech.instacart.com/the-story-behind-an-instacart-order-part-1-building-a-digital-catalog-46df5a8ff705.
[5] *Id.*

45.     Instacart's catalog is the backbone of its service; it is the first thing a customer sees and the basis for all of Instacart's business. Instacart has made a massive investment of time, effort, and resources to develop its format and functionality.

46.     It also has spent considerable time, effort, and resources curating its photographs to make them pleasing to the eye. The high quality of Instacart's product photography differentiates it from its competitors.

47.     The strength and quality of Instacart's catalog is a significant competitive advantage that has taken years of investment, creativity, technological innovation, and plain hard work to develop and perfect.

48.     Based upon an analysis of salary and other expenses, Instacart estimates that, since 2015, it has spent at least $17 million to create and maintain its catalog. But these are just the direct costs to Instacart, and do not include costs to implement and integrate the catalog as a seamless experience across its Platform.

49.     The value of Instacart's exclusive catalog to its marketing share and profits, and its relationships and goodwill with retailers, customers, and vendors, is substantially greater, and is difficult, if not impossible, to quantify.

## II.     INSTACART'S CREATION OF COPYRIGHTED IMAGES THROUGH MOBILE PHOTO STUDIO

50.     In the early days of Platform, one of the major pain points for Instacart was that there were items in a retailers' catalog for which the retailer had no corresponding imagery—this was particularly the case for produce, meats and other perishable items, which are often seasonal or uncommon. This issue was more pronounced for smaller retailers or retailers without sophisticated e-commerce functions.

1387375

51.     For example, a customer seeking to purchase an uncommon product, such as durian fruit, would see the description for an item, but no image. Instead, the customer would see an empty space or grey box rather than the appropriate photo of the item.

52.     This led to a poor experience for customers, retailers, shoppers and advertisers: customers would not purchase items they could not see images of, advertisers would not pay for advertising displayed next to a missing image, and retailers did not like the unprofessional look of their digital aisles.

53.     To solve this, Instacart decided to invest heavily in, and continues to invest heavily in, robust catalog efforts to fill in gaps in a retailer's imagery or catalog with its own imagery and standard product descriptions.

54.     The proprietary, copyrighted images of groceries and other products that Instacart creates via the MoPho Studio are a key part of that effort. Instacart's MoPho Studio was started in August 2015. Since then, Instacart has expanded the use of its MoPho Studio images to virtual storefronts for 412 retailers, including retailers who operate in Texas and elsewhere.

55.     The MoPho Studio is integral to Instacart's efforts to create an overall business aesthetic that is clean, simple, modern, crisp, bright, direct, consistent, and visually enticing.

56.     MoPho Studio images help Instacart to offer customers a magical shopping experience via storefronts that reflect the highest aesthetic standards. By advertising products using these high-quality images, Instacart aims to create an experience that is at least as good as, if not better than, in-person shopping.

57.     MoPho Studio images are also crucial to Instacart's partnerships with retailers. These high-quality images are designed to inspire new purchases and to encourage return visits to retailer virtual storefronts. Furthermore, Instacart's proprietary images provide an essential

1387375

12

business advantage to retailers and small or local CPG producers that lack a complete product

catalog of their own, allowing those retailers to showcase and market new products without

going through the costly process of creating product images themselves.

58.     Both shoppers and retailers can participate in the MoPho Studio as photographers,

and must photograph specified products in a manner consistent with Instacart's guidelines and

best practices. *See* **Ex. B**.

59.     MoPho Studio photographers must also use their independent judgment to apply

Instacart's aesthetic guidelines to each image to ensure that it contributes to the optimal shopping

experience. Indeed, the requirements for successful MoPho Studio photographers include the

ability to work independently and exercise independent creative judgment.

60.     The first step in creating a MoPho Studio image is obtaining a "lightbox." A

lightbox is a boxlike structure used to help eliminate shadows on light-colored surfaces, and to

help produce even, consistent, bright lighting from all angles. Proper lighting is crucial to allow

MoPho Studio photographers to take what Instacart calls "glamour" or "hero" shots of products

— that is, images that are vibrant, attractive, and enticing, as opposed to images that are boring,

muddled, or flat.

61.     The next step in creating a MoPho Studio image is product framing and

placement, including adjustments to the subject matter to render it more aesthetically pleasing.

Because of the diversity of product shapes and packaging, this step entails a considerable amount

of personal aesthetic judgment, both on Instacart's part and on the part of the individual

photographer.

62.     Instacart encourages MoPho Studio photographers to review and refine their work

before submitting it electronically to Instacart. In particular, Instacart suggests that

1387375

13

photographers take multiple photographs of a product from various angles, to ensure that Instacart can select the best version.

63.     The MoPho Studio photographer then selects the highest quality images taken in a session, and uploads those photos for Instacart's further review and retouching. Instacart accomplishes its second-level review and retouching through a vendor with technical expertise in the area.

64.     Instacart has provided this vendor with detailed instructions regarding its desired aesthetic and the means of selecting and creating images consistent with it. *See* **Ex. C**. Although the vendor is expected to comply with Instacart's creative direction, each image requires independent aesthetic judgment to retouch it in a manner that creates images that are enticing to customers.

65.     During second-level review, Instacart's vendor discards any images that fail Instacart's minimum criteria for subject matter, lighting, angle, perspective, framing, focus, or color.

66.     During the retouching process, Instacart's vendor also crops, rotates, resizes, and reframes images as necessary to satisfy Instacart's aesthetic values. As necessary during retouching, Instacart's vendor may also add color saturation, brightness, and contrast to eliminate background anomalies and bring the image closer to the clean, crisp, bright, modern aesthetic prevailing in the current catalog.

67.     Instacart's MoPho Studio produces images that spark customers' passion and excitement for the foods and products they love, and inspires them to continue returning to retailer storefronts on the Instacart Platform for their shopping needs.

1387375

### III.   CORNERSHOP

68.     Cornershop, which was founded in 2015 by Oskar Hjertonsson, Daniel

Undurraga, and Juan Pablo Cuevas, is an online and app-based platform that allows consumers to

purchase products from local stores for on-demand and scheduled delivery. In many respects,

Cornershop's operational model closely resembles Instacart's.

69.     Launched in Chile, Cornershop has expanded operations to Peru, Colombia,

Brazil, Mexico, and Canada.

70.     In the process of seeking and acquiring investments, Cornershop has held itself

out to investors as an "Instacart for Latin America."[6] In other words, Cornershop went into

business with the intent to copy Instacart's successful business model.

71.     On May 7, 2020, after five years of operating exclusively outside the United

States, Cornershop launched in Miami and Dallas.

72.     Cornershop advertises that it provides delivery services to the following locales:

a)      In Dallas: North Dallas, East Dallas, Highland Park, Greeneville, Knox-

Henderson, Uptown, Oak Lawn, Old East Dallas, Downtown, Deep Ellum, Design

District, Oak Cliff/West Dallas, South Dallas, Plano, Lewisville, Frisco, Allen,

Carrollton, Irving, and The Colony; and

b)      In Miami: Miami Beach, North Miami, Upper East Side, Little Haiti,

Little River, Buena Vista, Design District, Wynwood, Edgewater, Midtown, Downtown,

Brickell, Key Biscayne, Little Havana, Liberty City, Riverside, Civic Center, The Roads,

---

[6] *See* "Jackson Square Ventures just closed its third fund with $193 million; here's how it plans
to invest it" (October 14, 2019), *available at* https://techcrunch.com/2019/10/14/jackson-square-
ventures-just-closed-its-third-fund-with-193-million-heres-how-it-plans-to-invest-it.

1387375

Coconut Grove, Coral Way, Coral Gables, South Miami, Miracle Mile, West Flager, and Allapattah.[7]

73.     Despite Cornershop's admitted interest in replicating the Instacart model, Cornershop does not collaborate with retailers in the same way as Instacart.

74.     Whereas Instacart partners with retailers to provide consumer-facing storefronts, Cornershop states on its website that it does not enter into "long-term contracts" with retailers.[8]

75.     Instead, Cornershop simply asks retailers to register on its website. According to the website, once a retailer has registered, Cornershop checks whether the store meets its requirements. If it does, Cornershop states on its website that it invites the retailer to launch its store on Cornershop's platform.[9]

76.     Although Cornershop is currently only delivering in the United States in the Miami and Dallas metro areas, it is expanding rapidly. Cornershop has already posted job openings for San Francisco, Washington, D.C., New York, and Austin. *See* **Ex. A**.

77.     On October 11, 2019, Uber announced its plans to buy a majority stake in Cornershop.[10] According to media reports, the deal involves a reported $459 million for a 51% stake of Cornershop, putting Cornershop's overall valuation close to $1 billion dollars.[11]

---

[7] *See* "FAQ Shoppers Growth US," (last accessed June 24, 2020), *available at* https://cornershopapp.com/en-us/shoppers/candidates/faq.

[8] "Cornershop for stores," (*last accessed* June 19, 2020), *available at* https://Cornershopapp.com/en-us/stores.

[9] *Id.*

[10] *See* "Uber to Acquire Majority Ownership in Cornershop" (October 11, 2019), *available at* https://investor.uber.com/news-events/news/press-release-details/2019/Uber-to-Acquire-Majority-Ownership-in-Cornershop/default.aspx.

[11] *See* "Uber's Latin American Antitrust Challenges Regarding its $459 Million Acquisition of 51% of Cornershop" (March 24, 2020), *available at* https://medium.com/@evan.epstein/ubers-

1387375

## IV.   INSTACART DISCOVERS CORNERSHOP'S SCRAPING AND COPYING OF ITS COPYRIGHTED IMAGES AND OTHER PROPRIETARY DATA

78.     On May 7, 2020, the day Cornershop launched in Dallas and Miami, Instacart discovered that Cornershop had stolen and copied thousands of Instacart's images, including copyrighted images created via the MoPho Studio, images Instacart has received a license to use from its retailer partners, and images which Instacart licenses from other sources.

79.     Not only has Cornershop reproduced Instacart's copyrighted images, it has also copied product titles, pricing, and product information, including product availability data.

80.     On information and belief, Cornershop has used and/or procured, and continues to use and/or procure, Instacart's copyrighted images, pricing, and product data by engaging in, directing, controlling, or procuring "scraping," "crawling," and/or the use of a "robot" or "spider." In brief, all of these terms refer to the use of automated software to extract and store data from a website for future use by the scraper.

81.     The automated scraping software or system used by Cornershop, and/or its agents, enables Cornershop and/or its agents to enter into and use, or to cause to be entered into and used, the Instacart Platform and its content by mimicking an actual customer.

82.     On information and belief, Cornershop's employees and/or agents created Instacart user accounts to access Instacart's full catalog from a "logged in state" before and/or in the course of running scraping tools.

83.     Upon entering into and using the Instacart Platform, Cornershop and/or its agents have conducted or caused large-scale searches for retailer products on Instacart's virtual retailer

---

latin-american-antitrust-challenges-regarding-its-459m-acquisition-of-51-of-cornershop-21fd70bcecbf.

1387375

storefronts, which Cornershop and/or its agents then copied, or cause to be copied, and uploaded

onto Cornershop's own platform to advertise products and groceries.

## V.    SCRAPING CATALOGS IS A KEY PART OF CORNERSHOP'S BUSINESS MODEL

84.    Cornershop cannot dispute that scraping is a part of its business model.

Cornershop has posted job openings in Dallas, Austin, and elsewhere, for software engineers

whose express role is to "Scrape and maintain catalogues using multiple frameworks (scrapy,

beautifulsoup, selenium, etc.):

1387375



85.     Scrapy is an open source and collaborative framework for extracting data from websites. Likewise, beautifulsoup is a Python library designed for projects like screen-scraping. Selenium, which is a tool for automating web applications, can be used to automate the actions of clicking on buttons, filling forms, scrolling, and taking screenshots of images on a large scale. All three applications are well-known scraping tools with powerful capabilities.

86.     These job postings further explain that an ideal engineering candidate will have "[a]dvanced scraping" capabilities and the "[a]bility to generate good scrapers."

87.     In addition to scraping skills, Cornershop's job postings seek candidates with experience in "rate limiting" and the "use of proxies." Rate limiting and the use of Internet Protocol address proxies are common techniques scrapers employ to hide their activities and defeat a host website's countermeasures, which are designed to detect and deter unauthorized access and copying.

88.     In other words, Cornershop's job postings reveal that, not only are they looking for scrapers, they are specifically looking for engineers who know how to conceal their scraping activities and evade protective measures designed to prevent those activities.

89.     A list of Cornershop's job postings for scrapers are included in **Exhibit A**.

90.     Cornershop's public job offerings confirm what Instacart's investigation also shows: that Cornershop is not creating an independent catalog with its own images, but instead is populating it with images stolen from Instacart.

1387375

## VI.   CORNERSHOP'S SCRAPING VIOLATES INSTACART'S TOS, IS UNAUTHORIZED, AND EXCEEDS AUTHORIZED ACCESS TO THE INSTACART PLATFORM

91.    Instacart's investigation demonstrates that Cornershop has scraped Instacart's copyrighted images, pricing, and product information in violation of Instacart's TOS, the CFAA, and THACA.

92.    The Instacart Platform repeatedly and prominently displays a link to Instacart's TOS and requires a prospective user to accept Instacart's TOS as a condition of making purchases or accessing certain content available in its catalog:

a)      Instacart informs a new user that "[b]y signing up, you agree to our Terms of Service[.]" *See* **Ex. D.**

b)      Instacart users are also required to accept the TOS when they complete an order and checkout. *Id.* At that point, Instacart informs the user that "[b]y placing your order, you agree to be bound by the Instacart Terms of Service[.]" *Id.*

c)      The TOS are also included in a link prominently displayed at the bottom of Instacart's website. *Id.*

93.    As a result, an Instacart user (whether a bona fide third-party customer or a competitor like Cornershop) cannot sign up for and access services without clearly manifesting, by creating the account, that he or she agreed to the TOS. In addition, an Instacart user cannot complete transactions (i.e., checkout) without again manifesting assent to the TOS.

94.    Instacart's TOS condition all access to and use of Instacart's Platform on compliance with an express agreement not to copy, reverse engineer, data scrape, or frame the Instacart website or mobile app:

Instacart grants you a limited, non-exclusive, non-transferable, and revocable

license to use the Services for their intended purposes subject to your compliance with these Terms and Instacart's policies. You may not copy, modify, distribute, sell, or lease any part of the Services. Unless such restriction is prohibited by law or you have Instacart's written permission, you may not reverse engineer or attempt to extract the source code of the Services. You may only access the Services through the interfaces that Instacart provides for that purpose (for example, you may not "scrape" the Services through automated means or "frame" any part of the Services), and you may not interfere or attempt to disrupt the Services.

**Ex. D**, TOS, § 1 (June 25, 2019).

95.      Furthermore, users who access the Instacart Platform "on behalf of a business or other entity, . . . represent and warrant that [they] have the necessary authority to bind that business or entity to these Terms and that [they] are agreeing to these Terms on behalf of that business or entity." *Id.*

96.      Instacart's TOS also include copyright and DMCA notices:

Instacart respects the intellectual property rights of others and has implemented a copyright and trademark policy in accordance with the Digital Millennium Copyright Act and other relevant laws. Instacart will respond to valid notices of copyright infringement and reserves the right to terminate any users, at Instacart's sole discretion and without notice, who repeatedly infringe copyrights or other intellectual property rights.

**Ex. D,** TOS, § 19.

97.      Since Instacart's launch, its TOS have prohibited unauthorized copying and scraping.[12]

98.      Instacart's reliance on TOS to prohibit scraping and unauthorized copying of its copyrighted content is common in the industry. It is so common that Cornershop's own TOS include the same prohibitions. Under Cornershop's TOS, a user must:

---

[12] Instacart has issued five versions of its TOS since Cornershop launched in 2015. Each version contains a substantively identical scraping prohibition. Attached hereto as **Exhibit E** are Instacart's legacy TOS.

1387375

> represent, warrant, and agree that you will not contribute any Content or User Submission (each of those terms is defined below) or otherwise use the Services or interact with the Services in a manner that: . .
>
> (a) infringes or violates the intellectual property rights or any other rights of anyone else (including Cornershop); . . .
>
> (h) "crawls," "scrapes," or "spiders" any page, data, or portion of or relating to the Services or Content (through use of manual or automated means); . . .
>
> (i) copies or stores any significant portion of the Content.

*See* **Ex. F.**

## VII. CORNERSHOP'S EXECUTIVES AND EMPLOYEES HAVE BOUND THE COMPANY TO THE TOS

99. After discovering Cornershop's scraping of its site and theft of its images on May 7, 2020, Instacart conducted an investigation to determine whether Cornershop had agreed to Instacart's TOS expressly prohibiting such activities.

100. Instacart's investigation confirmed that Cornershop was expressly aware of Instacart's TOS, and the anti-scraping provision contained therein, before scraping and/or engaging in and/or directing, controlling, or procuring the scraping of Instacart's Platform.

101. Cornershop's improper access starts at the top. Cornershop executives and employees with actual and apparent authority to bind the company have accepted Instacart's TOS on behalf of Cornershop.

102. Instacart's business records reflect that Cornershop co-founder and CEO, Oskar Hjertonsson, created an Instacart user account on December 16, 2014.

103. On May 24, 2016, Mr. Hjertonsson inputted a credit card labeled as "Cornershop" as a method of payment for his Instacart account.

104.     Mr. Hjertonsson has placed at least seventy-five orders on Instacart, the most recent on June 28, 2020, long after Instacart added its TOS to the checkout flow. Some of those orders were placed with the credit card labeled Cornershop.

105.     Not only has Mr. Hjertonsson signed up for an Instacart account, he also signed up to indicate his interest in becoming a shopper on the Instacart Platform in February 2015.

106.     Instacart's business records further reflect that Mr. Hjertonsson's co-founder and Cornershop's CTO, Daniel Undurraga, also signed up for an account around the same time as Mr. Hjertonsson, on December 10, 2014.

107.     On January 21, 2020, Mr. Undurraga added a delivery address that was labeled as a Cornershop business address, located at 2181 Greenwich Street, San Francisco, CA 94123.

108.     Since 2014, Mr. Undurraga has placed at least ten Instacart orders from this account, the most recent on January 23, 2020.

109.     Instacart's business records further reflect that Juan Cuevas, another Cornershop co-founder, also signed up for an account on December 25, 2014.

110.     Mr. Cuevas linked the same phone number to his account as Mr. Hjertonsson. A Google search of the phone number used reflects that this is a phone number linked to Cornershop, indicating the use of a business, and not personal, number.

111.     Instacart's business records also reflect that Cornershop's Heads of Operations, both in Chile and the United States, also signed up for Instacart accounts.

112.     Diego Carey, who is Head of Operations for Cornershop in Chile, signed up for an Instacart account on December 10, 2014, the same day as co-founder Daniel Undurraga. Since then, he has placed three orders.

1387375

113.    Like Mr. Hjertonsson, Mr. Carey also signed up to indicate his interest in becoming a shopper on the Instacart Platform in April 2020.

114.    Likewise, Prashant Garg, who is Cornershop's Head of Operations for the U.S., signed up for an Instacart account on July 15, 2017. Since then, Mr. Garg has placed two orders.

115.    Not only did Mr. Garg sign up for an account, he also signed up to indicate his interest in becoming a shopper on the Instacart Platform in February 2020.

116.    Reflected in the chart below is a summary of the account histories for additional Instacart accounts which match the names of Cornershop executives:

| Name | Title | Location | Email | Date Account Created (in UTC) | Sign-up Zip Code | Most Recent Order (in UTC) |
|------|-------|----------|-------|-------------------------------|------------------|----------------------------|
| Fredrik Axelsson ^ | Director | Chile | fredrik@cornershopapp.com | 5/8/19 19:12 | M4W1A8 | N/A |
| Matt Emmert | Regional General Manager | Texas | matt.emmert@gmail.com | 3/10/14 15:56 | 10012 | N/A |
| Matt Emmert | Regional General Manager | Texas | matt.emmert2@gmail.com | 9/29/16 6:21 | 92109 | 6/5/20 18:54 |
| Klaas (Last Name Unknown) | Head of Business Development | Canada | klaas@cornershopapp.com | 10/29/19 14:36 | M4Y1C9 | N/A |
| David Krevat | Regional General Manager | Florida | dkrevat@uber.com | 6/20/17 22:16 | 33019 | 6/22/17 2:11 |
| Felix Lulion | Head of Expansion | Canada | flulion@gmail.com | 1/28/15 20:02 | M4Y0A9 | 4/4/19 14:05 |
| Osvaldo Mena Requena ^ | Chief of Engineering | Chile | xployt.cl@hotmail.com | 2/27/13 22:03 | 94102 | N/A |
| Diego Neves ^ | Head of Supply Chain | Mexico | diego_neves4@hotmail.com | 9/8/15 20:19 | N/A | N/A[13] |

[13] Where there are multiple line entries under the same name, it is because the user created multiple accounts.
Light green cells indicate user accounts with "@cornershopapp.com" email addresses.
^ Indicates that this user signed up from outside of the U.S. or Canada, where Instacart operates.

117.    Instacart's business records reflect that, following the lead of Cornershop's senior executives and operations leads, many Cornershop employees have signed up for Instacart accounts as well, with the purpose of conducting business reconnaissance.

118.    A number of these accounts were created in the United States, including in Texas specifically.

119.    For example, Instacart's business records reflect that on May 12, 2020, Texas-based Cornershop Operations executive Neil Bronfin signed up for an Instacart account with his Cornershop email address (neil.bronfin@cornershopapp.com).

120.    However, a number of these accounts also appear to belong to Cornershop employees who reside outside of the United States or Canada, where Instacart's services are not available. These Cornershop employees nevertheless inputted U.S. or Canadian zip codes at the time of sign-up.

121.    Some of the accounts which match the names of known Cornershop employees list no zip code at all.

122.    At least one of these users has also initiated the sign-up process to become a shopper who can accept orders for personal shopping and/or delivery on the Instacart Platform.

123.    Additionally, others have signed up for Instacart using their Cornershop business email address.

124.    The account data for these users, which is voluminous, is summarized in the chart below:

| Name | Title | Location | Email | Date Account Created (in UTC) | Sign-up Zip Code | Most Recent Order (in UTC) |
|------|-------|----------|-------|-------------------------------|------------------|----------------------------|

| | | | | | | |
|---|---|---|---|---|---|---|
| Catalina Campos ^ | Frontend Engineer | Chile | pioandcollc@gmail.com | 1/27/19 20:03 | 77007 | 2/2/19 16:35 |
| Catalina Campos ^ | Frontend Engineer | Chile | catalina.campos@icf.com | 12/12/19 15:09 | 77007 | 12/12/19 15:20 |
| Catalina Campos ^ | Frontend Engineer | Chile | catalina.campos@utexas.edu | 3/12/20 13:59 | 77008 | 3/12/20 14:24 |
| Jayant Chawla * | Research/Data Analytics/Business Intelligence | Canada | jayantchawla.jayvee@gmail.com | 3/4/19 3:44 | M5V3A6 | 6/25/20 13:39 |
| Mariia Chernysheva ^ | Frontend Engineer | Chile | maria.bookvoed@gmail.com | 5/15/20 19:11 | N/A | N/A |
| Austinq D | N/A | N/A | austin@cornershopapp.com | 5/22/19 17:50 | M6J2T4 | N/A |
| Brett Davies | US Operations | California | davies.brett@gmail.com | 6/4/19 3:32 | 94109 | N/A |
| James Gear | US Operations | Texas | jamesp.gear@gmail.com | 2/10/16 12:41 | 80202 | 1/29/20 19:09 |
| James Gear | US Operations | Texas | jamesgear@mail.com | 11/26/19 16:37 | 32578 | 11/26/19 17:34 |
| JP Gear | US Operations | Texas | jpgear78@gmail.com | 7/1/16 0:50 | 80202 | 11/2/19 16:46 |
| Kdididi Kdkdkd | N/A | N/A | cristopher+6373738@cornershopapp.com | 5/6/19 15:57 | 91402 | N/A |
| Juan Pablo Melo ^ | CRM Engineer | Chile | juanpi@cornershopapp.com | 10/2/18 16:51 | N/A | N/A |
| Anderson Montanez ^ | Backend Engineer | Chile | amontanez407@gmail.com | 5/6/17 14:31 | N/A | 6/15/20 13:56 |
| Josefina Nagel ^ | Business Development | Chile | jose@cornershopapp.com | 3/9/16 15:38 | 94105 | N/A |
| Max Navia ^ | Backend Engineer | Chile | max_navia@yahoo.com | 5/3/20 14:57 | 60633 | 5/23/20 1:25 |
| Jessica Okhonmina | Human Resources Manager | Canada | jessica@cornershopapp.com | 3/9/20 17:45 | N/A | 5/24/20 16:26 |
| Marie Oquet ^ | Marketing | Chile | marie@cornershopapp.com | 5/30/16 19:43 | 94105 | N/A |
| Christopher Oyarzun ^ | Android Engineer | Chile | cristopher@cornershopapp.com | 4/29/19 22:40 | N/A | N/A |
| Paulina (Last Name Unknown) | N/A | N/A | paulina@cornershopapp.com | 6/7/19 17:02 | 11222 | 6/7/19 17:21 |
| Fernanda Quiroz ^ | Project Manager | Chile | fernanda.quiroz@cornershopapp.com | 6/22/20 22:02 | N/A | N/A |

1387375

| Christopher Ruzich ^ | Android Developer | Chile | chris.ruzich@gmail.com | 3/6/19 23:16 | 33139 | N/A |
|---|---|---|---|---|---|---|
| Chaq Ueta | N/A | N/A | chaq@cornershopapp.com | 5/29/15 1:09 | 94123 | N/A |
| Ignacio Valdebenito ^ | Business Intelligence Engineer | Chile | ignacio.valdebenito@cornershopapp.com | 8/2/19 1:42 | 96150 | N/A |
| Camilo Vera ^ | iOS Developer | Chile | camilovera8952@gmail.com | 5/8/20 21:04 | N/A | N/A |
| Jose Ignacio Villagran | N/A | N/A | ji.villagran@cornershopapp.com | 12/27/19 18:33 | N/A | N/A |
| Chloe Woods | Marketing | Canada | chloe@cornershopapp.com | 5/28/19 18:04 | N/A | N/A[14] |

125.    Given its own TOS anti-scraping provisions, and the acceptance of Instacart's TOS by Cornershop's most senior executives and employees alike, Cornershop knew that scraping Instacart's Platform was prohibited, and nonetheless proceeded with that scraping in excess of any authorized access.

## VIII.  CORNERSHOP HAS STOLEN THOUSANDS OF INSTACART'S IMAGES VIA ITS ILLEGAL SCRAPING ACTIVITIES

126.    Based on Instacart's investigation to date, Cornershop has scraped and copied at least 2,199 of Instacart's copyrighted photos, along with proprietary product and pricing data. The full number of scraped images may be far greater.

127.    To date, Instacart's copyrighted images, as well as pricing and product data, have been posted on the following Cornershop retailer storefront sites: Publix, Milam's Market, Sabor Tropical, and ALDI.

---

[14] Where there are multiple line entries under the same name, it is because the user created multiple accounts
Light green cells indicate user accounts with "@cornershopapp.com" email addresses
* Indicates that this user tried to sign up to be a shopper
^ Indicates that this user appears to have signed up from outside of the U.S. or Canada, where Instacart operates

128.    Instacart owns all right, title, and interest in the Instacart-copyrighted images Cornershop has stolen. The stolen images are registered with the United States Copyright Office.

129.    A list of Instacart's copyrighted and registered photographs that Cornershop has copied without authorization, to date, is attached as **Exhibit G**. The copyrighted images that Cornershop has stolen from Instacart are attached hereto as **Exhibit H.**

130.    Cornershop's identical copying is apparent from a simple visual inspection, which Instacart conducted as soon as it suspected Cornershop of stealing from its catalog.

131.    Instacart confirmed its visual comparison using computer analysis. Instacart compared the 64-bit hash values for Instacart's copyrighted photographs against Cornershop's images. The hash value of each image is an algorithmic representation of an image's pixel color and arrangement. In general, two images with identical hash values contain precisely the same color pixels in precisely the same arrangement–i.e., they are identical copies.

132.    To eliminate false positives, Instacart compared each set of matched Cornershop and Instacart images using a more granular 1024-bit perceptual hashing analysis that can detect even subtle differences in pixel color and orientation.

133.    The 64-bit hash values for the images in **Exhibit H**, and the Cornershop versions of those images, are identical.

134.    Instacart's copyrighted images were published through display on retailer storefronts to logged-in users of the Instacart Platform. In addition, shoppers are able to download images from the app through which they receive orders and reproduce those images.

## IX.    CORNERSHOP HAS REMOVED OR ALTERED THE COPYRIGHT MANAGEMENT INFORMATION ON INSTACART'S IMAGES

135.    Instacart uses unique file names of each image on its website that it uses as Copyright Management Information.

1387375

136.    Instacart uses the unique file names to track and catalog information associated with each image in its database, including: the author of each image, the type of person (contractor or full-time employee) who took the photograph, and its work for hire or assignment status, which tracks its copyright ownership.

137.    The file names are conveyed in connection with each copy of the images. Right-clicking on images to save, copy, or download them renders these unique file names visible.

138.    But, in an effort to conceal and disguise its copying, Cornershop deleted Instacart's file names for each image and created new file names for its stolen versions.

139.    Cornershop then uploaded and displayed each otherwise identical image along with its altered file name to Cornershop's platform, thereby intentionally distributing copies of the altered images without Instacart's authorization.

140.    Cornershop also knew—or at a minimum, had reasonable grounds to know—that the removal or alteration of the Copyright Management Information would induce, enable, facilitate, or conceal its infringement of Instacart's copyrighted images.

141.    Instacart's website and TOS contain copyright and DMCA notices, which Cornershop ignored when proceeding to scrape and copy Instacart's images on a massive scale.

142.    **Exhibit I** reflects the Instacart file name, and the renamed or altered Cornershop file name, for the images Instacart has discovered that Cornershop has copied to date.

## X.    CORNERSHOP HAS STOLEN INSTACART'S CATALOG AND IS PASSING IT OFF AS ITS OWN

143.    Not only has Cornershop changed the unique file names on Instacart's images to conceal its unlawful activity, it has done so as part of a coordinated effort to pass off Instacart's catalog as its own, instead of investing the resources and hard work necessary to build one from scratch.

1387375

144.    Cornershop promises retailers that listing products on its platform will "[e]xpand [retailers] reach to serve more customers," "[o]ffer [their] customers personalized service when they need it," and provide "data about which items are popular on the app, and which items our Shoppers cannot find in-store."[15]

145.    All the retailers have to do to reap these benefits, Cornershop claims, is "[o]perate a brick and mortar store," "[c]ommit to maintaining [the] store's catalog," have "a bank account that is associated with the company," and "[b]e willing to deliver a first-class service."[16]

146.    Cornershop promises to do the rest: according to its website, "Cornershop is a platform through which [retailers] can deliver . . . products to homes in [their] area in less than 60 minutes and without any investment."[17]

147.    But, Cornershop's own founders have admitted that the company is also not putting in that investment: as CTO Daniel Undurraga explained in 2016, Cornershop was "profitable almost from day one" because it "did not have a lot of R&D expense."[18]

148.    More recently, CEO Oskar Hjertonsson has publicly stated that, while its acquisition by Uber is pending, Cornershop has been left with "only 9 months of cash in the bank."[19] As a result, Hjertonsson claims, "instead of focusing on building a better company,

---

[15] "Cornershop for stores," (last accessed June 24, 2020), *available at* https://cornershopapp.com/en-us/stores (emphasis added).

[16] *Id.*

[17] *Id.*

[18] "Cornershop aims for slice of grocery shopping in Chile and Mexico" (June 1, 2016), *available at* https://www.idgconnect.com/idgconnect/interviews/1001219/cornershop-aims-slice-grocery-shopping-chile-mexico.

[19] Oskar Hjertonsson (@ohjertonsson), Twitter (March 21, 2020 at 8:01 pm), *available at* https://twitter.com/ohjertonsson/status/1241560624875720705.

1387375

[Cornershop's executives] spend a lot of our time deciding which parts of our plan to cut or delay because of the regulatory uncertainty we find ourselves in."[20]

149.    In the midst of this uncertainty, and having promised retailers a no-investment-necessary product, Cornershop has cut corners: stealing Instacart's catalog and passing it off as Cornershop's original work.

150.    Customers who view a Cornershop retailer storefront are greeted by a Cornershop banner at the top of the page, images copied from Instacart's Platform, and then a Cornershop banner at the bottom of the page, indicating the images are Cornershop's original work.

151.    Moreover, Cornershop misrepresents in its TOS that the Instacart images it has displayed are Cornershop property. Per those terms, "The materials displayed or performed or available on or through the Services, including, but not limited to, text, graphics, data, articles, photos, images, illustrations, and so forth (all of the foregoing, the 'Content') are protected by copyright and/or other intellectual property laws." *See* **Ex. F.**

152.    In fact, Cornershop purports to give users a "license to use (i.e., to download and display locally)" the images purloined from Instacart "solely for purposes of using [Cornershop's] Services." *Id.*

153.    The result of Cornershop's efforts is customer confusion. Cornershop has held out the images as its own, falsely stated that it has IP rights in the images, whether by way of its own copyright or a license from others, and even claimed to grant a limited license to users of the site. As a result of its false and misleading statements and omissions, customers have been fooled into

---

[20] *Id.*

believing that Cornershop has created these images or that it has legally obtained them elsewhere.

154.    But, in truth, Cornershop stole the images from Instacart.

## XI.    CORNERSHOP'S UNLAWFUL ACTIONS HAVE CAUSED INSTACART SIGNIFICANT DAMAGES AND IRREPARABLE HARM

155.    As a direct and proximate result of Defendants' willful copyright infringement and scraping activities, Instacart has suffered, and will continue to suffer, monetary loss and irreparable harm to its business, reputation, and goodwill. Cornershop has also obtained an unfair competitive advantage, as it has been able to compete in the marketplace without investing the time, money, and other resources required to cultivate a catalog, or customer and retailer relationships.

156.    As explained above, Instacart's catalog—comprised, in part, of Instacart's copyrighted product images—is carefully curated to display each retailer's products attractively in order to draw customers, motivate purchases, build retailer relationships, and provide the best user experience. In particular, Instacart's copyrighted MoPho Studio images are significant drivers of customer sales and retailer goodwill.

157.    But because Instacart's catalog has now also appeared on Cornershop's platform, and because Cornershop has created virtual storefronts replicating Instacart's storefronts over which Instacart has no ability to ensure quality control, Instacart's valuable and longstanding retailer relationships are being irreparably damaged.

158.    By way of example, the retailer Milam's Market has expressed alarm that it has spent years investing in an association with Instacart, only to find that another entity has

1387375

33

replicated the results of those efforts. Milam's Market has also contacted Cornershop to protest its inclusion on Cornershop's platform, stating that Cornershop's conduct "fraudulently and misleadingly suggests to the public that a sponsorship or affiliation exists between Milam's Market and Cornershop." **Ex. J.**

159.    Additionally, retailers have expressed concern with incorrect product pricing on Cornershop's platform resulting from copying Instacart's catalog. When Cornershop scrapes information from Instacart, Cornershop pulls not only each product image, but also the product's pricing. However, product prices change frequently in the grocery industry, and thus, by the time Cornershop displays Instacart's pricing information on Cornershop's platform, the price may have become inaccurate.

160.    For example, Instacart has a longstanding relationship with Sprouts, a national grocery store chain. Sprouts has told Instacart that it is sensitive to variations between its online and in-store prices. But, Cornershop's scraping of Instacart's Platform has caused such variation on Cornershop's platform, because Cornershop has scraped prices available on the Instacart-Sprouts storefront at a specific point in time, and has not varied it to match changes in Sprouts pricing.

161.    Frustrated with the deviation from its in-store pricing caused by Cornershop's scraping activities, Sprouts has raised this issue with Instacart. This has placed a wedge in a long-time relationship between Instacart and Sprouts.

162.    Similarly, Cornershop's scraping of Instacart's images has caused, and will cause, inventory issues with retailers, which harm Instacart. When Instacart places a product on a retailer's virtual storefront, Instacart uses information from the retailer to ensure that this product

is in stock and available for the shopper to pick up. Instacart adjusts the online availability of retailers' products based on its data about those retailers' supply.

163.     By scraping Instacart's catalog and displaying portions of it on Cornershop's platform, Cornershop has essentially created two images for each product. If the volume of sales is significant, this action disrupts both Instacart's and the retailer's assessment of inventory.

164.     This disruption creates the risk that customers will more frequently receive an out-of-stock message while shopping on Instacart's Platform. Customers displeased with their experience on the Instacart Platform lodge complaints, not only with Instacart, but also with the retailers directly.

165.     Retailers rely on Instacart to provide a premium customer experience so that their brands are not damaged as a result of issues on Instacart's Platform. As a result, there is a risk that the inventory issues caused by Cornershop's actions damage the goodwill built up in Instacart's relationships with both its customers and its retailer partners.

166.     In addition, Cornershop has already caused, and will continue to cause, customer confusion and loss of Instacart's customers.

167.     Cornershop has willfully and intentionally diverted Instacart customers to Cornershop's virtual storefronts using scraped images from Instacart's own Platform.

168.     Cornershop has also actively concealed the fact that these images originate from Instacart's Platform. The result is irreparable harm in the form of customer confusion: Cornershop customers, unaware of the company's machinations, have incorrectly assumed that the images on the Cornershop platform belong to Cornershop, not Instacart.

169.    As explained above, one source of Instacart's revenue is membership and delivery fees from Instacart's customers. Consequently, the loss of customers results in the loss of revenue, market share, and good will for Instacart.

170.    Calculating damages that encompass the lost profits and market share alone is difficult to do, as the volume and profitability of the delivery service depend on unpredictable factors, such as daily fluctuations in grocery prices and consumer behavior in the face of changes in macroeconomic conditions, including for example, a public health pandemic. The damage to other aspects of Instacart's business from impairing its customer relationships is even harder to quantify, but threatens to be far-reaching and long lasting.

171.    Irreparable harm to Instacart's relationship with its customers and retailer partners inevitably leads to harm to its advertiser relationships.

172.    Advertisers elect to promote their products with Instacart, confident that the advertisements they publicize with Instacart will reach a wide array of customers.

173.    By damaging Instacart's goodwill with customers and retailers, and by devaluing Instacart's catalog, Cornershop has necessarily impacted Instacart's goodwill and relationships with advertisers as well.

174.    Cornershop also has gained an unfair head start and competitive advantage by bypassing the significant time investment and resource allocation that Instacart put into developing its catalog, as well as its relationships with retailers, customers, and advertisers.

175.    Instacart's catalog has been developed and honed through years of labor and significant financial investment to attract new customers, motivate customers to purchase products, drive new and greater retailer relationships, and generate fruitful advertiser relationships. As a result, Instacart's catalog is both tried-and-true and industry leading.

1387375

176.    Cornershop has recreated Instacart's iterated catalog for Cornershop's own benefit, but with negligible investment and without expending the resources needed to mount a catalog on its own.

177.    Cornershop has also leapfrogged over the time-intensive process of forming retailer partnerships. Instacart invests substantially in market research and business development to identify and subsequently cultivate retailer relationships and establish a strong brand association. Instacart has developed and honed this process through years of effort.

178.    Cornershop, on the other hand, has not had to identify potential retailer partners, nor has it had to expend resources to create or develop a relationship with any retailer. By stealing Instacart's catalog, it is possible that Cornershop has reduced its launch period for retailers to less than a day, in contrast to the months or years-long launch process that Instacart undergoes.

179.    On July 13, 2020, Instacart sent Cornershop a cease-and-desist letter demanding that Cornershop cease all scraping of Instacart's Platform, infringement of its copyrighted images, passing off those images as its own, and breach of its TOS. **Ex. K.**

180.    On July 14, 2020, Cornershop responded to Instacart's cease-and-desist letter, stating that Cornershop "has ceased the activities described in [Instacart's] letter and, accordingly, believes the matter has now been resolved." **Ex. L.**

181.     However, Cornershop continues to engage in unauthorized activities. Indeed, even after Cornershop claimed to have "ceased the activities described in [Instacart's] letter," Instacart has determined that thousands of its copyrighted images remain available through Cornershop URLs, including, as examples and without limitation:

- https://cornershopapp.com/en-us/products/zc0t-simply-nature-organic-macaroni-and-cheese-aldi

1387375

- https://cornershopapp.com/en-us/products/12hr1-country-pride-chicken-leg-quarters-aldi
- https://cornershopapp.com/en-us/products/zdbn-millville-variety-pack-instant-oatmeal-aldi
- https://cornershopapp.com/en-us/products/zner-pueblo-lindo-yellow-rice-aldi
- https://cornershopapp.com/en-us/products/z5bs-millville-berry-kids-krunch-aldi
- https://cornershopapp.com/en-us/products/114zm-tuscan-garden-italian-seasoned-croutons-aldi
- https://cornershopapp.com/en-us/products/zolz-tuscan-garden-caesar-croutons-aldi
- https://cornershopapp.com/en-us/products/z5nq-simms-teriyaki-beef-jerky-aldi
- https://cornershopapp.com/en-us/products/z55t-simms-peppered-beef-jerky-aldi
- https://cornershopapp.com/en-us/products/z5n3-chefs-cupboard-homestyle-turkey-gravy-aldi
- https://cornershopapp.com/en-us/products/11x2l-daily-bread-hummus-dip-1s4-milams-markets
- https://cornershopapp.com/en-us/products/12g9n-andean-dream-organic-fusilli-milams-markets
- https://cornershopapp.com/en-us/products/119v0-plugra-butter-salted-european-style-milams-markets
- https://cornershopapp.com/en-us/products/10hsk-picsweet-peas-and-carrots-1s4-milams-markets
- https://cornershopapp.com/en-us/products/10sap-principe-prosciutto-di-san-daniele-1s4-milams-markets
- https://cornershopapp.com/en-us/products/11wj2-essential-everyday-clover-honey-milams-markets
- https://cornershopapp.com/en-us/products/11poo-wild-harvest-organic-bartlett-pear-halves-in-100-juice-milams-markets
- https://cornershopapp.com/en-us/products/11x3k-borden-gouda-regular-shreds-milams-markets
- https://cornershopapp.com/en-us/products/10o7o-mantova-olive-oil-extra-virgin-organic-spray-1s4-milams-markets
- https://cornershopapp.com/en-us/products/12fkm-boars-head-lemon-pepper-chicken-breast-boneless-skinless-1s4-milams-markets
- https://cornershopapp.com/en-us/products/12zjb-essential-everyday-sliced-mushrooms-sabor-tropical-supermarket
- https://cornershopapp.com/en-us/products/132pn-don-satur-bizcochos-dulce-argentine-cookies-sabor-tropical-supermarket
- https://cornershopapp.com/en-us/products/yj2x-flora-romano-olives-publix-super-market
- https://cornershopapp.com/en-us/products/yjbz-jarrow-formulas-vitamin-d3-5000-iu-dietary-supplement-publix-super-market
- https://cornershopapp.com/en-us/products/yve1-iberia-yellow-rice-publix-super-market

1387375

182.     As a result, Instacart has no choice but to file the instant lawsuit to protect its copyrighted and proprietary images, and to prevent continued illegal scraping of its Platform.

## CAUSES OF ACTION

### COUNT ONE
### COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(g)

183.     Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

184.     Instacart stores and maintains its product images and data on servers that transmit those images and data in interstate and foreign commerce.

185.     Individuals accessing or using Instacart's website or mobile application are accessing Instacart's servers and viewing and obtaining the data stored thereon.

186.     Instacart's servers are "protected computers" within the meaning of the CFAA.

187.     Dozens of Cornershop executives and employees agreed to Instacart's TOS by creating accounts with Cornershop email addresses.

188.     Each of Cornershop's three co-founders created Instacart accounts within a year prior to launching Cornershop.

189.     Instacart's TOS state that users who access the Instacart Platform "on behalf of a business or other entity, . . . represent and warrant that [they] have the necessary authority to bind that business or entity to these Terms and that [they] are agreeing to these Terms on behalf of that business or entity." **Ex. D**, TOS, § 1.

190.     Instacart's TOS condition access to Instacart's servers on compliance with the TOS.

191.     Instacart's TOS explicitly prohibit access to Instacart's servers for the purpose of copying, modifying, distributing, selling, leasing, scraping, or framing Instacart's website or mobile application or the data or images thereon.

192.     On information and belief, Cornershop directed its employees or agents to scrape and copy Instacart's website.

193.     In scraping and copying Instacart's servers, Cornershop intentionally accessed Instacart's servers without authorization.

194.     In scraping and copying Instacart's servers, Cornershop intentionally exceeded authorized access to Instacart's servers.

195.     Cornershop knew that its access to Instacart's servers was unauthorized: Instacart's TOS, to which Cornershop officers, employees, and agents consented, clearly communicate that scraping is prohibited; Cornershop's own terms of use prohibit scraping; and Instacart put Cornershop on notice that it scraping was unauthorized through a cease and desist letter.

196.     Cornershop intentionally and improperly obtained, by way of its scraping and copying, information from Instacart's servers, including data and copyrighted images. *See* **Exs. G, H.**

197.     In scraping and copying Instacart's servers, Cornershop knowingly and with intent to defraud accessed Instacart's servers without authorization.

198.     In scraping and copying Instacart's servers, Cornershop knowingly and with intent to defraud exceeded authorized access to Instacart's servers.

199.     Cornershop furthered its intended fraud by scraping and copying Instacart's servers, and thereby obtained data and copyrighted images of considerable value.

1387375

40

200.     Cornershop has caused substantial damage to Instacart by misappropriating and misusing Instacart's protected data for its own commercial purposes.

201.     Cornershop's scraping and copying have directly and proximately imposed further damage and loss on Instacart in the form of costs associated with its investigation of and response to Cornershop's scraping and infringement, conducting a damage assessment, and restoring the data, program, and systems impacted by Cornershop's malfeasance to their condition prior to its offenses.

202.     Instacart losses exceed $5,000 in any one-year period, including 2020, and will continue to do so into the future.

203.     Cornershop is directly and vicariously liable for the actions of its directors, officers, employees, contractors, and other agents, including all those acting at its direction or with its authorization.

## COUNT TWO

### TEXAS HARMFUL ACCESS BY A COMPUTER ACT, TEX. PENAL CODE § 33.02

204.     Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

205.     Dozens of Cornershop employees agreed to Instacart's TOS by creating accounts with Cornershop email addresses.

206.     Each of Cornershop's three co-founders created Instacart accounts within a year prior to launching their competing service.

207.     Instacart's TOS state that users who access the Instacart Platform "on behalf of a business or other entity, . . . represent and warrant that [they] have the necessary authority to

1387375

41

bind that business or entity to these Terms and that [they] are agreeing to these Terms on behalf of that business or entity." **Ex. D,** TOS, § 1.

208.    On information and belief, Cornershop employees or other contractors acting at Cornershop's direction and under Cornershop's control, accessed Instacart's servers through Instacart user accounts for the purpose of scraping Instacart's product data and images.

209.    Instacart's TOS condition access to Instacart's servers on compliance with the TOS, including the provision prohibiting scraping.

210.    Instacart's TOS explicitly prohibit access to Instacart's servers for the purpose of copying, modifying, distributing, selling, leasing, scraping, or framing Instacart's website or mobile application or the data or images thereon.

211.    In scraping and copying Instacart's servers, Cornershop knowingly accessed Instacart's servers without Instacart's effective consent.

212.    Instacart did not consent to Cornershop's scraping and copying.

213.    Any consent potentially provided to Cornershop was ineffective because it was induced by deception and, separately, because it was used for a purpose other than that for which the consent was given.

214.    Cornershop knowingly accessed Instacart's computer system with intent to defraud Instacart, with intent to harm Instacart, and with intent to alter and damage Instacart's data and images.

215.    Cornershop's misconduct directly and proximately damaged Instacart in at least the following ways:

1387375

a)      Costs associated with its response to Cornershop's scraping and infringement, conducting a damage assessment, and restoring the data, program, and systems impacted by Cornershop's malfeasance to their condition prior to its offenses.

b)      Diminution in value of its product images as a result of consumer source confusion.

216.    Instacart was injured, and the value of its data and images was impaired, as a result of Cornershop's knowing and willful violation of THACA.

217.    Cornershop's violation of THACA was committed with fraud, malice, and gross negligence.

218.    Cornershop is directly and vicariously liable for the actions of its directors, officers, employees, contractors, and other agents, including all those acting at its direction or with its authorization.

## COUNT THREE

### BREACH OF CONTRACT

219.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

220.    Dozens of Cornershop employees agreed to Instacart's TOS by creating accounts with Cornershop email addresses.

221.    Each of Cornershop's three co-founders created Instacart accounts immediately prior to launching their competing service.

222.    Each Cornershop co-founder or employee that created an Instacart user account acted as Cornershop's agent, with either actual or apparent authority to bind Cornershop to Instacart's TOS.

1387375

43

223.     Further, Instacart's TOS state that users who access the Instacart Platform "on behalf of a business or other entity, . . . represent and warrant that [they] have the necessary authority to bind that business or entity to these Terms and that [they] are agreeing to these Terms on behalf of that business or entity." **Ex. D,** TOS, § 1.

224.     A valid, enforceable contract existed between Cornershop and Instacart in the form of Instacart's TOS.

225.     Instacart performed its obligations under the contract by providing Cornershop employees with a license to access Instacart's service within the authorized scope of the TOS.

226.     Instacart's TOS provide that users "may not 'scrape' the Services through automated means[.]" **Ex. D**, TOS, § 1.

227.     On information and belief, Cornershop employees or agents used Instacart user accounts to access and then scrape Instacart's product data and images.

228.     Cornershop's scraping is a material breach of Instacart's TOS.

229.     Cornershop's breach has damaged Instacart in at least the following ways:

a)     Reasonably foreseeable monetary losses associated with Instacart's response to Cornershop's scraping and infringement, conducting a damage assessment, and restoring the data, program, and systems impacted by Cornershop's malfeasance to their condition prior to its offenses.

b)     Reasonably foreseeable lost profits due to diverted customer accounts obtained as a result Cornershop's use of scraped images.

c)     Reasonably foreseeable damage to Instacart's goodwill through use of Cornershop's scraped images.

1387375

## COUNT FOUR

### COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501

230.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

231.    Each of the works identified in **Exhibit H** is an image that is an original and creative work of authorship and subject to a valid and subsisting copyright registration with the United States Copyright Office.

232.    Instacart owns the rights to each image in **Exhibit H** and its corresponding copyright registration.

233.    Cornershop had substantial access to Instacart's copyrighted works through the use of its unlawful scraping tools, which Cornershop used to make unauthorized copies in violation of 17 U.S.C. § 106(1).

234.    Cornershop created additional unauthorized copies on its website and application, and also made, and continues to make, unauthorized public displays of those works on its website and application in violation of 17 U.S.C. § 106(1) and (5).

235.    Each Cornershop image in **Exhibit H** has an identical 64-bit hash value as each Instacart image, such that Cornershop has copied the entirety of each image's protectable elements.

236.    Instacart never authorized or licensed Cornershop to make copies or publicly display any of the works in **Exhibit H.**

237.    Cornershop's infringement of each Instacart image list in **Exhibit H** was knowing, willful, and intentional.

238.     As a direct and proximate result of Cornershop's conduct, Instacart has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

239.     Cornershop's conduct has caused and will continue to cause irreparable harm to Instacart and its interests in the works listed in **Exhibit H** and, as such, Instacart has no adequate remedy at law and is entitled to an injunction.

### COUNT FIVE

### DIGITAL MILLENNIUM COPYRIGHT ACT
### Deletion of Copyright Management Information, 17 U.S.C. §§ 1202(b)(1)

240.     Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

241.     The unique file names associated with each of Instacart's images constitute Instacart's protected Copyright Management Information.

242.     Cornershop intentionally removed Instacart's unique file names from Instacart's images.

243.     Cornershop intentionally altered Instacart's unique file names from Instacart's images.

244.     Cornershop knows, or has reasonable grounds to know, that its conduct induced, enabled, facilitated, and/or concealed Cornershop's copyright infringement.

245.     Instacart has suffered actual damages as a result of Cornershop's violation of this count in the form of lost profits and market share through diverted customers, lost goodwill, reputational harm including dilution of the image's marketing value, and dilution of Instacart's investment of time and resources developing the copyrighted images.

246.     As a direct and proximate result of Cornershop's conduct, Instacart has suffered and will continue to suffer monetary damages in an amount to be determined at trial, including,

1387375

46

but not limited to, actual damages, Cornershop's profits, statutory damages, costs, attorneys' fees, and/or any other relief afforded by 17 U.S.C. § 1203.

247.    Cornershop's conduct has caused and will continue to cause irreparable harm to Instacart and its interests in its Copyright Management Information and, as such, Instacart has no adequate remedy at law.

## COUNT SIX

### DIGITAL MILLENNIUM COPYRIGHT ACT
### Distribution of Removed or Altered Copyright Management Information,
### 17 U.S.C. §§ 1202(b)(2)

248.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

249.    The unique file names associated with each of Instacart's images constitute Instacart's protected Copyright Management Information.

250.    Cornershop has distributed and is distributing Copyright Management Information, knowing that protected Copyright Management Information has been removed or altered without Instacart's authority.

251.    Cornershop knows, or has reasonable grounds to know, that its conduct induced, enabled, facilitated, or concealed Cornershop's copyright infringement.

252.    Instacart has suffered actual damages as a result of Cornershop's violation of this count in the form of lost profits and market share through diverted customers, lost goodwill,

reputational harm including dilution of the image's marketing value, and dilution of Instacart's investment of time and resources developing the copyrighted images.

253.    As a direct and proximate result of Cornershop's conduct, Instacart has suffered and will continue to suffer monetary damages in an amount to be determined at trial, including, but not limited to, actual damages, Cornershop's profits, statutory damages, costs, attorneys' fees, and/or any other relief afforded by 17 U.S.C. § 1203.

254.    Cornershop's conduct has caused and will continue to cause irreparable harm to Instacart and its interests in its Copyright Management Information and, as such, Instacart has no adequate remedy at law.

## COUNT SEVEN

### DIGITAL MILLENNIUM COPYRIGHT ACT
**Distribution of Works with Removed or Altered Copyright Management Information,
17 U.S.C. §§ 1202(b)(3)**

255.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

256.    The unique file names associated with each of Instacart's images constitute Instacart's protected Copyright Management Information.

257.    Cornershop has distributed and is distributing Instacart's works, or copies of Instacart's works, knowing that Instacart's Copyright Management Information has been removed or altered without Instacart's authority.

258.    Cornershop knows, or has reasonable grounds to know, that its conduct induces, enables, facilitates, or conceals Cornershop's copyright infringement.

259.    Instacart has suffered actual damages as a result of Cornershop's deletion and replacement of Instacart's Copyright Management Information in the form of lost profits through

diverted customers, lost goodwill, dilution of the image's marketing value, and dilution of Instacart's investment of time and resources developing the copyrighted images.

260.    As a direct and proximate result of Cornershop's conduct, Instacart has suffered and will continue to suffer monetary damages in an amount to be determined at trial, including, but not limited to, actual damages, Cornershop's profits, statutory damages, costs, attorneys' fees, and/or any other relief afforded by 17 U.S.C. § 1203.

261.    Cornershop's conduct has and will continue to cause irreparable harm to Instacart and its interests in its Copyright Management Information and, as such, Instacart has no adequate remedy at law.

## COUNT EIGHT

## COMMON LAW UNFAIR COMPETITION

262.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

263.    Cornershop is Instacart's competitor.

264.    Cornershop has engaged in a scheme of "reverse passing off" Instacart's images as its own by displaying Instacart's images on Cornershop's website accompanied by a false representation that Cornershop owns or has permission to use the images, and absent any indication that the images originated with Instacart.

265.    Instead, the placement of Instacart's images on Cornershop's site, adjacent to a Cornershop banner, and in connection with material misstatements on its website, has falsely conveyed that these images are Cornershop's original work.

266.    Cornershop has used Instacart's images in such a manner as is calculated to deceive the public into thinking that the images are Cornershop's own images.

267.    Cornershop misappropriated Instacart's images.

268.    Cornershop has falsely designated the images as originating with Cornershop by prominently displaying them on Cornershop's website absent any indication that the images originated with Instacart and by including statements that mislead an ordinary consumer and retailer to believe that Cornershop obtained them via legitimate means.

269.    Consumers are likely to be confused as to the source of the images because Cornershop has obscured means of determining their true origin and ownership.

270.    Cornershop's unfair competition has directly and proximately damaged Instacart in at least the following ways:

a)      Dilution of the value of Instacart's product images.

b)      Dilution of the value of Instacart's investment of time and resources in generating its product images and catalog.

c)      Dilution in the value of Instacart's investment of time and resources in developing its industry-leading product catalog.

d)      Lost profits due to diverted customer accounts as a result of Cornershop's use of Instacart's product images.

e)      Irreparably diverting market share.

## COUNT NINE

## CIVIL CONSPIRACY

271.    Instacart incorporates and realleges all foregoing Paragraphs as if fully set forth herein.

272.    The Defendants, three distinct corporations, are a group of two or more persons for purposes of Texas law.

1387375

273.    On information and belief, agents or employees acting on behalf of each

individual Defendant knew that they were unlawfully accessing Instacart's Platform for the

purpose of scraping Instacart's catalog and then misappropriating Instacart's images and product

data. The actions of those agents are attributable to their principals. As such, each Defendant had

the specific intent to engage in an unlawful scheme of scraping Instacart's website to obtain an

unfair competitive advantage.

274.    Oskar Hjertonsson is the sole officer and director of Cornershop Technologies,

Inc. and Delivery Technologies US, Inc. On information and belief, Mr. Hjertonsson is also a

member of Delivery Technologies LLC. Acting in his capacity as corporate decision maker for

each Defendant, Hjertonsson caused each entity to engage in the scheme to scrape Instacart's

catalog for unfair competitive advantage. Accordingly, the Defendants had a meeting of the

minds and agreed to engage in an unlawful course of action to scrape and misappropriate

Instacart's images and data.

275.    At least the following overt acts were taken in furtherance of the conspiracy:

a)      Unlawful infringement of Instacart's copyrighted images in violation of

the Copyright Act;

b)      Unlawful access to Instacart's protected computers in violation of the

CFAA;

c)      Unlawful access to Instacart's servers without effective consent in

violation of Texas law;

d)      Unlawful deletion, alteration, and dissemination of Instacart's protected

Copyright Management Information in violation of the DMCA; and

e)      Unfair competition in violation of Texas law.

276.    The Defendants' scheme proximately caused at least the following damages:

    a)    Dilution of the value of Instacart's product images.

    b)    Dilution of the value of Instacart's investment of time and resources in generating its product images and catalog.

    c)    Lost profits due to diverted customer accounts as a result of Cornershop's use of Instacart's product images.

277.    As co-conspirators, each Defendant is jointly and severally liable for the actual damages caused by each other Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Instacart prays for judgment and relief as follows:

278.    Preliminary and permanent injunctive relief prohibiting Cornershop from unlawfully accessing Instacart's service in violation of the CFAA and THACA;

279.    Preliminary and permanent injunctive relief prohibiting Cornershop from infringing Instacart's copyrights in its product images;

280.    Preliminary and permanent injunctive relief prohibiting Cornershop from violating the DMCA by removing and altering Instacart's protected Copyright Management Information and distributing Instacart's Copyright Management Information and protected works with altered Copyright Management Information.

281.    Preliminary and permanent injunctive relief prohibiting Cornershop from engaging in unfair competition through a scheme of "reverse passing off" Instacart's images as its own in violation of Texas law;

282.    A judgment that Cornershop has willfully infringed Instacart's copyrights in its product images;

1387375

283.    A judgment that Cornershop violated the DMCA by deleting and replacing Instacart's Copyright Management Information on product images;

284.    A judgment that Cornershop violated the DMCA by distributing Instacart's Copyright Management Information and protected works with altered Copyright Management Information;

285.    A judgment that Cornershop violated the CFAA by accessing Instacart's servers without authorization and exceeding its authorized access;

286.    A judgment that Cornershop violated THACA by accessing Instacart's system without effective consent;

287.    A judgment that Cornershop breached its contract with Instacart by scraping Instacart's data in violation of the TOS;

288.    A judgment that Cornershop engaged in unfair competition under Texas common law;

289.    Actual and/or statutory damages for each infringing use of Instacart's copyrights in an amount to be proven at trial;

290.    Actual damages, Cornershops' profits, and/or statutory damages for each violation of the DMCA in an amount to be proven at trial;

291.    Actual damages arising out of Cornershop's CFAA violations;

292.    Compensatory and consequential contract damages in an amount to be proven at trial;

293.    Lost profits damages in an amount to be proven at trial;

294.    Exemplary damages in an amount to be proven at trial;

1387375

295.    Impoundment of all devices or products in Cornershop's custody or control that were or are involved in its violation of the DMCA;

296.    Attorneys' fees and costs to the extent allowable under applicable law; and,

297.    Such further and other relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Instacart demands a trial by jury as to all claims and issues so triable.

1387375

Dated: July 16, 2020                      Respectfully submitted,

*/s/ Sharif E. Jacob, with permission by*
*Michael E. Jones*
SHARIF E. JACOB, Lead Attorney *(Pro Hac Vice)*
DAVID SILBERT *(Pro Hac Vice)*
SARAH SALOMON *(Pro Hac Vice)*
NIALL ROBERTS *(Pro Hac Vice)*
PUJA PARIKH *(Pro Hac Vice)*
MAILE YEATS-ROWE *(Pro Hac Vice)*
NICHOLAS GREEN *(Pro Hac Vice)*
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
sjacob@keker.com
dsilbert@keker.com
ssalomon@keker.com
nroberts@keker.com
pparikh@keker.com
myeats-rowe@keker.com
ngreen@keker.com

MARK S. PUZELLA  *(Pro Hac Vice)*
ROBERT M. O'CONNELL, JR. *(Pro Hac Vice)*
CAROLINE K. SIMONS  *(Pro Hac Vice)*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
222 Berkeley Street, Suite 2000
Boston, Massachusetts 02116
Telephone:  617-880-1800
Facsimile:  617-880-1801
mpuzella@orrick.com
robert.oconnell@orrick.com
csimons@orrick.com

MICHAEL E. JONES
SBN: 10929400
Patrick C. Clutter, IV
SBN: 24036374
**POTTER MINTON**
110 North College, Suite 500
Tyler, Texas 75702
Telephone:  903-597-8311
Facsimile:  903-593-0846
mikejones@potterminton.com

1387375

patrickclutter@potterminton.com

Attorneys for MAPLEBEAR INC. DBA
INSTACART

1387375