# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

| | |
|---|---|
| MAPLEBEAR INC. DBA INSTACART,<br><br>                Plaintiff,<br><br>   v.<br><br>CORNERSHOP TECHNOLOGIES, INC.;<br>CORNERSHOP TECHNOLOGIES LLC;<br>DELIVERY TECHNOLOGIES US, INC.;<br>DOES 1-10,<br><br>                Defendants. | Case Action No. 2:20-cv-240<br><br>(ORAL ARGUMENT REQUESTED) |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Maplebear Inc. dba Instacart ("Instacart") respectfully submits the following Memorandum of Points and Authorities in support of its Motion for a Preliminary Injunction against Defendants Cornershop Technologies, Inc., Cornershop Technologies LLC, Delivery Technologies US, Inc., and Does 1-10 (collectively, "Cornershop").

## I.   INTRODUCTION

Instacart brings this motion to stop Cornershop's brazen and illegal accessing of its computers and theft of its intellectual property. Cornershop launched its online grocery-delivery platform in 2015, holding itself out as "the Instacart of Latin America." Now, it is entering the U.S. market. But instead of competing fairly, Cornershop is illegally scraping and wholesale copying Instacart's product catalog, a repository of highly valuable copyrighted images and data.

Instacart's catalog is central to its business. It is the first thing millions of customers see when entering the Instacart Platform, enabling them to identify and purchase products from retailers they love, delivered to their doorstep. For this reason, Instacart has invested years of effort and over $17 million to develop and refine its catalog. By copying and using it to compete against Instacart—without authorization and in violation of Instacart's Terms of Service ("TOS")—Cornershop has bypassed the substantial investments required from honest competitors in the online grocery industry. Yet even after Instacart demanded that Cornershop cease-and-desist its illegal activities, thousands of Instacart's copyrighted images remain available via Cornershop URLs. Unless enjoined, therefore, Cornershop will continue to exploit the unfair advantage and head start it has gained to distort the online grocery market and damage the goodwill Instacart has cultivated with its retail partners, customers, and advertisers.

As set forth below and in the accompanying declarations, the evidence of Cornershop's illegal access and scraping is clear and irrefutable. Cornershop's illegal business model violates

the Computer Fraud & Abuse Act ("CFAA"), Texas's anti-hacking statute ("THACA"), the Digital Millennium Copyright Act ("DMCA"), and Texas unfair-competition law, and infringes thousands of Instacart's copyrights. Accordingly, Instacart respectfully requests that the Court enter its proposed preliminary injunction.

## II.   BACKGROUND

### A.   Instacart has heavily invested in building an industry-leading business.

Founded in 2012, Instacart offers a cutting-edge platform ("the Platform") through which customers connect with personal shoppers to purchase products from their favorite retailers and arrange for those products to be delivered to them quickly. Instacart has built partnerships with more than 400 national, regional, and local retailers to facilitate delivery of essentials from more than 30,000 stores across North America. Declaration of Andrew Nodes ¶¶ 3-5 ("Nodes Decl.").

Instacart's Platform features "virtual stores" for its retail partners, allowing customers to browse aisles and product listings online. Declaration of Laurentina Romaniuk ¶¶ 6-7 ("Romaniuk Decl."); Declaration of Joseph Rustad ¶ 4 ("Rustad Decl."). To line the shelves of these virtual stores, Instacart uses its proprietary product catalog, which includes images, product descriptions, pricing information, and other data. Instacart has invested years of effort and over $17 million to develop and refine its catalog, including creating large numbers of original, copyrighted photographic works. Romaniuk Decl. ¶ 63; Nodes Decl. ¶ 40.

For example, in July 2015, Instacart created and launched its Mobile Photo Studio ("MoPho Studio") program, through which it trains shoppers and retailers to take photographs of products pursuant to Instacart's curated standards by instructing them how to stage, angle, light, and photograph products to showcase their most relevant and aesthetically pleasing features. Romaniuk Decl. ¶¶ 19-42. Instacart then retouches and enhances these images as appropriate. *Id.* ¶¶ 43-46. Finally, Instacart gives each image a specific file name that allows Instacart to track

each image's author, creation and publication date, and work-for-hire or assignment status. Rustad Decl. ¶¶ 62-65. Instacart then places these finished images in its curated catalog.

When an image is uploaded from the catalog to Instacart's Platform, the image's file name accompanies it and is visible upon right-clicking the image. *Id*. ¶ 65. Instacart owns the copyrights on thousands of these original images, which it has duly registered with the U.S. Copyright Office, and Instacart's website and apps prominently feature a copyright and DMCA notice. Romaniuk Decl. ¶¶ 47-61; Declaration of Katherine Son ¶¶ 3-8 ("Son Decl.").

> **B. Cornershop knows that Instacart's Terms of Service expressly prohibit "scraping" and other improper activities.**

At multiple points, Instacart presents users with the TOS that govern use of its services. Users must accept the TOS when they create an Instacart account, and again before they "check out" an order. Son Decl. ¶¶ 10-23. Instacart's TOS "grants [users] a limited . . . license to use the Services for their intended purposes." *Id.* ¶ 5. The TOS prohibit "scraping" or copying of Instacart's data, stating, "You may not copy, modify, distribute, sell, or lease any part of the Services. . . . [Y]ou may not 'scrape' the Services . . . and you may not interfere or attempt to disrupt the Services." *Id.* The TOS also include a DMCA and copyright notice. *Id.* ¶ 7. Cornershop has actual knowledge of Instacart's TOS because numerous Cornershop officers, employees, and agents consented to them, including Cornershop's founder and CEO (who linked his Instacart account to a Cornershop company credit card); other Cornershop department heads; and many members of Cornershop's engineering team. *Id*. ¶¶ 28-61.

> **C. Cornershop has accessed Instacart's website in violation of the TOS and stolen its intellectual property to unfairly compete against Instacart.**

Cornershop launched in 2015 in Chile, holding itself out as the "Instacart for Latin America." Nodes Decl. ¶ 80. In May 2020, it launched its first U.S. operations in Texas and Florida and it is planning launches in other U.S. locations. *Id.* at ¶ 81. Instead of competing

3

fairly, however, Cornershop has used scraping tools to surreptitiously access Instacart's Platform and misappropriate thousands of copyrighted images, as well as product and pricing data, from Instacart's valuable catalog, in willful violation of Instacart's TOS and federal and state law.

Cornershop's scraping is audacious. It has posted job openings in Dallas, Austin, and elsewhere seeking software engineers to "[s]crape and maintain catalogues using multiple frameworks," with job requirements including "[a]dvanced scraping capabilities" and the "[a]bility to generate good scrapers." Nodes Decl. ¶ 125. Through these and other means, Cornershop and/or its agents have accessed Instacart's Platform without authorization and conducted large-scale scrapes of Instacart's catalog, which Cornershop then uploaded onto its platform, and surrounded by Cornershop logos and banners. *Id.* ¶ 84.

As a result, Cornershop's platform has featured thousands of original, copyrighted images created through Instacart's MoPho Studio whose ultimate source can only have been Instacart's Platform.[1] Rustad ¶¶ 40-51; Romaniuk Decl. ¶ 61. Indeed, across all 91 Cornershop retailers active as of June 29, 2020, more than 18,000 products exactly matched Instacart's product name and included identical images. Rustad Decl. ¶¶ 49, 51. Cornershop has likewise copied pricing and product data from Instacart. *Id.* ¶¶ 45, 47. And Cornershop has removed and altered the file names from Instacart's product images—which Instacart uses as DMCA Copyright Management Information ("CMI")—thereby concealing its theft of Instacart's catalog and its infringement of Instacart's copyrights. *Id.* ¶¶ 62-70.

By illegally accessing and copying Instacart's catalog, Cornershop has avoided the substantial investments needed to build its own catalog by siphoning off the investment made by

---

[1] To confirm beyond any doubt that Cornershop is using copied Instacart's MoPho Studio images, Instacart compared the images' perceptual 64-bit hash values. Rustad Decl. ¶¶ 34-36.

Instacart. Nodes Decl. ¶¶ 91-101; Romaniuk Decl. ¶¶ 14-18. Indeed, Cornershop's Chief Technology Officer Daniel Undurraga boasted in 2017 that Cornershop was "profitable almost from day one" because it "did not have a lot of R&D expense." Nodes Decl. ¶ 92. Unless enjoined, Cornershop will continue to exploit that unfair advantage to deprive Instacart of its customers, market share, and goodwill, and distort the online grocery market.

## III. LEGAL STANDARD

To obtain a preliminary injunction, the moving party must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the injunction will result in irreparable injury, (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party, and (4) that the injunction will not disserve the public interest. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991). As demonstrated below and in the accompanying declarations, all four elements are readily satisfied here.

## IV. INSTACART IS LIKELY TO SUCCEED ON THE MERITS

### A. Instacart is likely to succeed on its CFAA claim.

The CFAA provides for injunctive relief and damages where a party (1) "intentionally accesses a computer without authorization or exceeds authorized access," (2) "obtains . . . information from any protected computer," and (3) causes "loss" in the amount of at least $5,000. 18 U.S.C. § 1030(a)(2)(C), (c)(4)(A)(i)(I), (g). Each of these elements is satisfied here.

#### 1. Cornershop has intentionally accessed a protected computer without and in excess of authorization.

The Fifth Circuit applies an "intended-use analysis" to CFAA liability under which "the scope of a user's authorization to access a protected computer" is analyzed based on "the expected norms of intended use or the nature of the relationship established between the computer owner and the user." *United States v. Philips*, 477 F.3d 215, 219 (5th Cir. 2007). Civil

5

(and criminal) liability attach whenever a defendant "obtain[s] unauthorized access to computerized data that [the defendant] was not permitted to view or use" or engages in conduct that is "not an intended use of the . . . network." *Id.* at 220.

Instacart's TOS make clear that Cornershop was authorized to access and use Instacart's services only "for their intended purposes," and was specifically prohibited from "copy[ing], modify[ing], distribut[ing], sell[ing] . . . [or] 'scrap[ing]'" any of Instacart's data. Son Decl. ¶ 5. Cornershop was aware of these limitations on access and use: Cornershop executives and employees with actual and apparent authority to bind the company accepted Instacart's TOS on behalf of Cornershop. *Id.* ¶¶ 28-61; *see also Century Sur. Co. v. Seidel*, 893 F.3d 328, 337 (5th Cir. 2018); *Bennett v. Reynolds*, 315 S.W. 3d 867, 884 (Tex. 2010). Cornershop's repeated access to and use of Instacart's computers to scrape and copy Instacart's data is therefore unauthorized. *See Phillips*, 477 F.3d at 220 ("[C]onduct . . . that uses computer systems not in any way related to their intended function amounts to obtaining unauthorized access." (internal quotation marks omitted)); *Frisco Med. Ctr., L.L.P. v. Bledsoe*, 147 F. Supp. 3d 646, 659 (E.D. Tex. 2015) (granting summary judgment to a CFAA plaintiff because the defendants "did not have the authorization to access, copy, and transmit [the plaintiff's] files, and . . . they exceeded their authorization in doing so").[2]

---

[2] Cornershop also obtained information from protected computers, which are defined as any computers "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). Here, Cornershop "accessed a computer connected to the internet," including servers supporting or hosting Instacart's Platform, mobile app, and data, which is sufficient to establish access to a "protected computer." *See Merritt Hawkins & Assocs., LLC v. Gresham*, 948 F. Supp. 2d 671, 674 (N.D. Tex. 2013). Instacart uses Amazon Web Services server infrastructure to store, organize, and deliver its catalog content. The servers are connected to the internet and regularly transmit data in interstate commerce. Rustad Decl. ¶¶ 9, 53, 55.

### 2. Cornershop has caused and continues to cause significant loss.

As relevant here, the CFAA defines "loss" as a "cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). The loss in this case consists, at minimum, of the cost of investigating and responding to Cornershop's extensive scraping and copying of Instacart data, as well as the cost of assessing the resulting damage. *See Frisco Med. Ctr.*, 147 F. Supp. 3d at 659 ("[C]ourts have held that the costs of a forensic investigation/damage assessment constitute loss under the CFAA."). Cornershop's actions have forced Instacart to devote employee resources to ascertaining the methods, history, scope, effects, and means of remedying Cornershop's scraping and copying at considerable expense. These costs significantly exceed the $5,000 threshold. Rustad Decl. ¶¶ 56-61. And as set forth below, the irreparable damage caused by Cornershop's conduct is far greater.

For all of these reasons, Instacart is likely to succeed on its CFAA claim.[3]

### B. Instacart is likely to succeed on its THACA claim.

Cornershop's violation of Texas's anti-hacking statute is equally flagrant. A person commits a THACA offense by "knowingly" accessing "a computer, computer network, or

---

[3] Cornershop is also liable for CFAA violations under the statute's other sections. Under section 1030(a)(4), a party violates the CFAA if, "knowingly and with intent to defraud, [it] accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." Cornershop knowingly accessed Instacart's Platform without authorization and Cornershop's data-scraping and copying also satisfies the CFAA's "fraud"-related elements. *See In re Thundervision, LLC*, 2010 WL 2219352, at *12 (Bankr. E.D. La. June 1, 2010) ("'Fraud' [for CFAA purposes] only requires a showing of unlawful access."). The data scraped from Instacart's Platform constitutes substantial value. *See Frisco Med. Ctr.*, 147 F. Supp. 3d at 660. Likewise, under section 1030(a)(5)(C), a party violates the CFAA if it "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss." Cornershop intentionally accessed Instacart's system without authorization, causing Instacart damage. Rustad Decl. ¶¶ 52-60.

computer system without the effective consent of its owner." Tex. Penal Code § 33.02(a); *see also* Tex. Civ. Prac. & Rem. Code § 143.001(a) (civil remedies). Consent is not "effective" if it is "induced by deception" or "used for a purpose other than that for which the consent was given." Tex. Penal Code § 33.01(12). Using a computer system in violation of its TOS is a paradigmatic example of a THACA violation. *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, 2007 WL 4823761, at *16 (N.D. Tex. Sept. 12, 2007) (finding a THACA violation where defendant's "use of the Southwest site falls squarely within the[] prohibitions" in website's TOS).

Cornershop's scraping and copying plainly violate THACA. As explained above, Cornershop was repeatedly made aware of the conditions on its access to and use of Instacart's Platform. Son Decl. ¶¶ 5-23. Nonetheless, Cornershop used Instacart's Platform for expressly prohibited purposes. *See Talon Transaction Techs., Inc. v. StoneEagle Servs., Inc.*, 2013 WL 12172926, at *3 (N.D. Tex. Aug. 15, 2013) ("[A]lthough Defendants had access to the database, they were not authorized to download information much less develop a computer program for extraction purposes."). Thus, Instacart is likely to succeed on its THACA claim. *See Inst. Sec. Corp. v. Hood*, 390 S.W. 3d 680, 684 (Tex. App. 2012) (affirming and broadening injunction where "appellee knowingly accessed [the plaintiff's] computer system and downloaded its files . . . without [its] consent").

    **C.**    **Instacart is likely to succeed on its DMCA claim.**

The DMCA prohibits a person from (1) intentionally removing or altering CMI, (2) distributing CMI knowing that the CMI has been removed or altered without authority of the copyright owner or the law, or (3) distributing works or copies of works knowing that CMI has been removed or altered without authority of the copyright owner or the law—while knowing, or having reasonable grounds to know, that removal or alteration of the CMI will "induce, enable, facilitate, or conceal an infringement" of the CMI. 17 U.S.C. § 1202(b).

Instacart's images contain CMI protectable under the DMCA. First, each of Instacart's product images contains CMI in the form of its unique image file name, which is conveyed in connection with each copy of each image. *See Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 277 (5th Cir. 2020) (quoting 17. U.S.C. § 1202(c)) (A "file name may be CMI if it is 'conveyed in connection with copies' of the underlying work and contains a 'title and other information identifying the work'" (quotation omitted)). Here, each file name is unique to its corresponding image, as the file name identifies the image's creation date, author, the photographer's employment status, and any work for hire or assignment governing copyright status. Nodes Decl. ¶¶ 62-65. Thus, Instacart's image file names constitute CMI. *See Energy Intelligence*, 948 F.3d at 277 (holding that file names constitute CMI); *see also Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 377 (S.D.N.Y. 2019) (gutter credits to photographs indicating the photographer's name are CMI).

The record also shows that Cornershop removed or altered Instacart's CMI. Cornershop copied thousands of images from Instacart's Platform, deleted Instacart's file names for each image, created new file names, then uploaded and displayed each otherwise identical image along with its altered file name to Cornershop's platform. Rustad Decl. ¶¶ 66-67. Accordingly, Cornershop intentionally removed, or at least altered, Instacart's CMI in violation of the DMCA. *See Ranco Indus., Inc. v. Bos. Floor Mats*, 2011 WL 1237938, at *3 (S.D. Tex. Mar. 31, 2011) (finding DMCA violation when defendant copied images and text, removed CMI, inserted its own CMI, and placed these images and text on defendant's website with minor differences).

Cornershop also intentionally distributed copies of Instacart's images knowing that Instacart's CMI was removed and altered without authorization, in violation of 17 U.S.C. § 1202(b) and (c). *See e.g.*, *BuzzFeed*, 356 F. Supp. 3d at 377 (listing elements of second and

9

third DMCA prongs). Online display constitutes "distribution." *See, e.g.*, *Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*, 2018 WL 8732108, at *1-2 (S.D. Tex. Nov. 8, 2018); *BuzzFeed*, 356 F. Supp. 3d at 376. Cornershop has made publicly available for display Instacart's copyrighted images—with altered file names—on its servers. Rustad. Dec. ¶ 66; Nodes Decl. ¶¶ 84, 88.

Moreover, Cornershop knew—or at a minimum, had reasonable grounds to know—that removal or alteration of the CMI will "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). In *Energy Intelligence*, for example, the pdf distributed by the plaintiff included a copyright notice, and thus, the Fifth Circuit held that the defendant should have known that changing the plaintiff's pdf file names to "123" would facilitate and help conceal copyright infringement. 948 F.3d at 267, 277; *see also RBH Energy, LLC v. Partners in Church Consulting, LLC*, 2016 WL 6496362 (N.D. Tex. May 6, 2016) (awarding default judgment on § 1202(b) claim based on removal of CMI as evidence of knowing enablement and intent to conceal). Instacart's website and TOS contain copyright and DMCA notices, which Cornershop disregarded when proceeding to scrape and copy Instacart's images and product information on a massive scale. *See* Son Decl. ¶¶ 28-61. Thus, Instacart is likely to prevail on its DMCA claim.

**D.     Instacart is likely to succeed on its copyright infringement claim.**

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Here, Cornershop's copying of thousands of copyrighted images easily satisfies these elements and injunctive relief is appropriate. 17 U.S.C. § 502(a) (providing for injunctions to restrain copyright infringement).

First, Instacart holds registered copyrights on all images asserted in this case. Romaniuk Decl. ¶¶ 47-61. Registrations constitute "prima facie evidence both that [the] copyright is valid

10

and that the registrant owns the copyright." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). In addition, they confirm the originality and aesthetic judgment inherent in each of Instacart's images. *See Feist*, 499 U.S. at 345. This includes creative decision-making as to staging, angling, lighting, and other aspects of composition and production aimed at serving the business needs of Instacart and its merchant partners. Romaniuk Decl. ¶¶ 19-46; *see also Biggs v. Cabela's, Inc.*, 2004 WL 530167, at *4 (N.D. Tex. Feb. 23, 2004) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved.").

Second, Cornershop is plainly copying the original constituent elements of Instacart's copyrighted works: its copies of Instacart's images are ***identical***. Rustad Decl. ¶¶ 43-46. Wholesale duplication is the most blatant form of copyright infringement. *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 46 F.3d 408, 410 (5th Cir. 1995).

### E.   Instacart is likely to succeed on its unfair competition claim.

"Reverse passing off" occurs when a defendant passes off a plaintiff's work as the defendant's own work. *See Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003); *Barnstormers, Inc. v. Wing Walkers, LLC*, 2011 WL 1671641, at *8 (W.D. Tex. May 3, 2011). Here, Cornershop is engaged in reverse passing off Instacart's product images and catalog. These materials are Instacart's work, but by publicly displaying them on Cornershop's platform, Cornershop is falsely passing them off as Cornershop's. Indeed, Cornershop misleadingly holds them out as Cornershop's own. *See* Son Decl. ¶ 9 (Cornershop's Terms of Service state that the information on its website is its own). Additionally, Cornershop has "utilized not one, but" thousands of Instacart's images, "the cumulative effect of which is greater likelihood of confusion." *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 479 (5th Cir. 1974). Accordingly, Cornershop has unfairly competed through reverse passing-off.

## V.     INSTACART SUFFERS IRREPARABLE HARM

As explained in the accompanying declarations of Andrew Nodes and Lauren Romaniuk, Instacart has suffered and will continue to suffer irreparable harm absent an injunction.

*First*, "[a] party is at risk of irreparable harm where, for example, they might lose a competitive advantage in the industry." *Intel Corp. v. Rais*, 2019 WL 164958, at *5 (W.D. Tex. Jan. 10, 2019) (internal quotation marks and citation omitted). Here, Cornershop's illegal scraping of Instacart's images and product and pricing information has given it an undue competitive advantage and head start. Cornershop has built its U.S. product catalog by stealing Instacart's, which Instacart invested years and millions of dollars to develop. Nodes Decl. ¶¶ 30-40; 91-101; Romaniuk Decl. ¶¶ 63-66. As a result, not only can Cornershop enter the market earlier than it otherwise could have—in days or weeks, rather than months or years—but it has avoided the substantial investments necessary to develop an independent catalog, leaving it free to direct its resources towards its rapid growth. Nodes Decl. ¶¶ 122-127.

*Second*, Cornershop's plagiarism of Instacart's Platform has degraded Instacart's status as the leading and distinctive participant in the U.S. online grocery delivery market. Nodes Decl. ¶¶ 99-100. Instacart "has provided substantial evidence that it has invested significant and considerable time, effort, and expense" in creating its iterated catalog, "resulting in accumulation of goodwill and publicity associated" with its unique service. *Alamo Area Mut. Hous. Ass'n, Inc. v. Lazenby*, 2017 WL 7052253, at *10 (W.D. Tex. July 28, 2017); *see also* Nodes Decl. ¶¶ 30-79, 91-101, 128, 144; Romaniuk Decl. ¶¶ 14-18; 63-68. But, Instacart has been forced to compete against its own catalog masquerading as another's, making its catalog no longer one-of-a-kind. Nodes Decl. ¶¶ 99-100.

***Third***, Cornershop is irreparably harming Instacart's reputation and goodwill with retailers. *See Capital One Fin. Corp. v. Fountain*, 2011 WL 13220697, at *6 (E.D. Tex. Feb. 11, 2011) (holding damage to goodwill and reputation constitute irreparable harm). Instacart's catalog was carefully created and curated to display retailers' products attractively and, consequently, to attract customers to order products based on the images. Nodes Decl. ¶ 103; Romaniuk Decl. ¶¶ 14-18. Instacart's catalog thus forms the basis for retailers' decisions to partner with Instacart, knowing that their Instacart virtual storefront will be aesthetically pleasing and will drive business. Nodes Decl. ¶ 104. Instacart's catalog also offers significant value to retailers who do not maintain their own independent catalogs. *Id.* ¶¶ 105-106. Now, however, Instacart has received complaints from its retailers because Instacart's catalog is replicated on Cornershop's website without the retailers' permission. *Id.* ¶¶ 108-109. And they have conveyed concern that Cornershop's plagiarized inventory and pricing information has become stale, but remains live on Cornershop's platform, leading to inventory issues, price mismatches, and customer confusion. *Id.* ¶¶ 110-116. Thus, because Cornershop has created virtual storefronts mimicking Instacart's, over which Instacart has no control, Instacart's valuable and longstanding retailer relationships have been irreparably damaged.

***Fourth***, Cornershop is damaging Instacart's hard won reputation and goodwill with customers. Cornershop has willfully and intentionally diverted Instacart customers to Cornershop by using Instacart's own catalog. Nodes Decl. ¶¶ 129-138. Instacart faces irreparable harm from loss of customer goodwill due to consumer confusion and Cornershop's misuse of Instacart's proprietary catalog to compete against Instacart. Additionally, by scraping Instacart's images—essentially creating duplicate images for each product without confirming an increase in inventory—Cornershop has disrupted Instacart's and the retailer's assessment of inventory. This

creates the risk that customers will more frequently order items on Instacart's Platform that prove to be out-of-stock, leading to a poor customer experience. Nodes Decl. ¶¶ 113-116; 137.

*Fifth*, Cornershop is irreparably harming Instacart by depriving Instacart of control over its copyrighted works. *See Dish Network, L.L.C. v. Del Carmen*, 2020 WL 1227311, at *6 (W.D. Tex. Mar. 13, 2020); *DSC Commc'n. Corp. v. DGI Tech.*, 898 F. Supp. 1183, 1195 (N.D. Tex 1995); *Entm't & Sports Programming Network, Inc. v. Edinburg Cmt. Hotel, Inc.*, 735 F. Supp. 1334, 1343 (S.D. Tex. 1986).

In short, due to Cornershop's theft of Instacart's catalog, "there is a substantial threat of irreparable harm to [Instacart] through market saturation, loss of goodwill, and the risk of confusion, for which there is no adequate legal remedy." *Lazenby*, 2017 WL 7052253, at *10.

## VI. THE REMAINING FACTORS FAVOR INSTACART

The remaining injunctive-relief factors also favor Instacart. First, the threatened harm to Instacart easily outweighs any harm to Cornershop. "[Cornershop] will suffer no injury if the court issues a preliminary injunction; [it] will simply be required to respect and recognize the [copyright and CMI] that [Instacart] rightfully owns under federal law," and the protected computers to which Instacart controls access. *Capital One*, 2011 WL 13220697, at *7. By contrast, without relief, Instacart will suffer considerable harm, irremediable by money damages alone, because "it cannot control its own goodwill and reputation." *Id.*

Second, an injunction does not "disserve" the public interest; it advances it. *Lakedreams* 932 F.2d at 1107. "The public expects laws passed by Congress to be enforced." *Live Nation Motor Sports, Inc. v. Davis*, 2006 WL 3616983, at *5 (N.D. Tex. Dec. 12, 2006); *see also PIU Mgmt., LLC v. Inflatable Zone Inc.*, 2010 WL 681914, at *8 (S.D. Tex. Feb. 25, 2010) ("[T]he public interest is always served by requiring compliance with the statutes of Congress[.]"). In

addition, enforcing the CFAA, DMCA, and THACA specifically furthers the public's interest in fair competition and in the integrity of data and computer systems. Enforcing copyright and unfair competition claims similarly serves fair competition, clarifies intellectual property protection, and "protect[s] the public from deception." *PIU Mgmt.*, 2010 WL 681914, at *8.[4]

## VII. THE REQUESTED RELIEF IS APPROPRIATE

The relief set forth in the accompanying Proposed Order is appropriate and necessary to prevent further irreparable harm to Instacart.[5] Cornershop should be ordered to immediately remove from its platform Instacart's protected information, including images and product information, that Cornershop illegally scraped in violation of federal and state law.

## VIII. CONCLUSION

For the foregoing reasons, Instacart requests that the Court GRANT its motion.

Dated: July 16, 2020                                Respectfully submitted,

By: *Sharif E. Jacob*
SHARIF E. JACOB, Lead Attorney
DAVID SILBERT
SARAH SALOMON
NIALL ROBERTS
PUJA PARIKH
MAILE YEATS-ROWE

---

[4] The Rule 65 bond requirement should be waived. *See* Fed. R. Civ. P. 65(c). The Rule 65 bond is a matter of discretion, and a court "may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978). Here, the equities run heavily in Instacart's favor, and there is no meaningful damage to Cornershop's legitimate business in simply compelling it to stop illegal activities. As such, a bond would be punitive and inappropriate. *See, e.g.*, *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974).

[5] An order of impoundment of the devices used to copy Instacart images or alter CMI is also warranted. 17 U.S.C. § 503(b); 17 U.S.C. § 1203(b)(2).

15

>NICHOLAS GREEN
>**KEKER, VAN NEST & PETERS LLP**
>633 Battery Street
>San Francisco, CA 94111-1809
>Telephone:  415 391 5400
>Facsimile:  415 397 7188
>sjacob@keker.com
>dsilbert@keker.com
>ssalomon@keker.com
>nroberts@keker.com
>pparikh@keker.com
>myeats-rowe@keker.com
>ngreen@keker.com
>
>MARK S. PUZELLA
>ROBERT M. O'CONNELL, JR.
>CAROLINE K. SIMONS
>**ORRICK, HERRINGTON & SUTCLIFFE LLP**
>222 Berkeley Street, Suite 2000
>Boston, Massachusetts 02116
>Telephone:  617-880-1800
>Facsimile:  617-880-1801
>mpuzella@orrick.com
>robert.oconnell@orrick.com
>csimons@orrick.com
>
>MICHAEL E. JONES
>SBN: 10929400
>Patrick C. Clutter, IV
>SBN: 24036374
>**POTTER MINTON**
>110 North College, Suite 500
>Tyler, Texas 75702
>Telephone:  903-597-8311
>Facsimile:  903-593-0846
>mikejones@potterminton.com
>patrickclutter@potterminton.com
>
>Attorneys for MAPLEBEAR INC. DBA INSTACART

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2020, the undersigned electronically filed the foregoing

16

Plaintiff's Motion for Preliminary Injunction with the Clerk of Court using the CM/ECF system, which will send notification to all attorneys of record. Because Defendants have not yet appeared in this action, this motion will also be served in conjunction with the Complaint and summons at the following registered agent locations:

Cornershop Technologies, Inc.
Incorporating Services, Ltd.
3500 S. Dupont Highway
Dover, DE 19901

Cornershop Technologies LLC
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Delivery Technologies US, Inc.
Incorporating Services, Ltd.
3500 S. Dupont Highway
Dover, DE 19901

*/s/ Sharif E. Jacob*

## **CERTIFICATE OF CONFERENCE IN ACCORDANCE WITH LOCAL RULE CV 7(i)**

The undersigned counsel states that, because Defendants have not yet appeared in this action and because this is an expedited motion, Plaintiff's counsel was not able to confer with any counsel for Defendants prior to filing. Upon Defendants' appearance, Plaintiff's counsel will attempt to resolve this motion by agreement.

*/s/ Sharif E. Jacob*